Queja contra el abogado SR. GILBERTO ÁLVAREZ CRESPO.

*Número:* MC-80-52      *Resuelto:* 23 de enero de 1981

Héctor A. Colón Cruz, Procurador General, y Lourdes del Carmen Rodríguez, Procuradora General Auxiliar, abogados de El Pueblo de Puerto Rico; Pedro Malavet Vega, abogado del Lcdo. Gilberto Álvarez Crespo.

PER CURIAM: Este caso de conducta profesional trae causa teñida en represalia. El quejoso señor Valentín Calderón promovió cargos de mala conducta profesional contra el abogado Sr. Gilberto Álvarez Crespo, como segunda ronda de su pugna en la Autoridad de Carreteras de la que ambos eran empleados, el abogado en calidad de técnico de laboratorio. Valentín Calderón acusó al abogado de fraude y al demostrar la investigación administrativa la falsedad de la acusación, aquél fue destituido de su empleo. Ante el Procurador General formuló cargos de mala práctica, consistente en que el abogado dedicaba parte del tiempo remunerado con su sueldo en dicha agencia, a labores y gestiones propias de la práctica privada de su profesión, de tal modo defraudando tanto al Estado Libre Asociado como al Gobierno federal que suplen los fondos de la Autoridad de Carreteras.

La investigación del Procurador General reveló, y así lo admite el querellado, que ha tenido una práctica ínfima y esporádica de su profesión de abogado, compareciendo al tribunal en casos criminales todos menos graves, con excepción de uno por asesinato en que compartió la representación con otro abogado, en diez ocasiones entre 19 diciembre, 1977 y 17 agosto, 1979; y ha preparado documentación en algunos casos de Derecho de familia. Cinco de esas comparecencias fueron

solicitudes de suspensión o alegación de culpabilidad, otra a una determinación de causa a las 8:30 de la *noche*, y otra a breve vista de un caso de tránsito. Su práctica forense es conocida por sus superiores en su empleo, que la permiten toda vez que no interfiere con sus horas regulares de empleo, ni disminuye el servicio público remunerado por la agencia. [1]

La observancia por este abogado de las normas y reglas de su empleo con una agencia de la Rama Ejecutiva no es materia ante nosotros [2] y aparece que ya fue adjudicada en favor del empleado. Hemos tomado el asunto para una decisión sobre un planteamiento latente o inarticulado: la incompatibilidad, si alguna, entre el empleo del querellado como técnico de laboratorio, y la práctica de la abogacía.

---

[1] Cuando este empleado solicitó del Colegio de Abogados fianza para ejercer la notaría, su superior expidió el 1ro junio, 1977 la siguiente certificación:

"Yo, Regis Deglans, Supervisor, Oficina Pruebas de Materiales por la presente certifico:

"Que las funciones que desempeña el Lcdo. Gilberto Alvarez Crespo, en la Autoridad de Carreteras en forma alguna confligen con sus funciones como notario bajo las leyes de Puerto Rico."

[2] La Sec. 4.6(3) de la Ley de Personal del Servicio Público, ordena:

"Cuando la conducta de un empleado no se ajuste a las normas establecidas, cada agencia deberá tomar las medidas correctivas necesarias. Entre otras medidas se podrán considerar la amonestación verbal, las reprimendas escritas, las suspensiones de empleos y sueldos, y las destituciones. Tanto las suspensiones de empleo y sueldo como las destituciones deberán notificarse por escrito a los empleados, indicando los fundamentos." 3 L.P.R.A. sec. 1336(3).

En opinión de 27 marzo, 1979 del Secretario de Justicia, se expresa:

"El análisis detenido de la *jurisprudencia, legislación y reglamentación* que procede, comprueba que no existe precepto legal, reglamentación o norma administrativa que prohíba o regule expresamente el ejercicio de la práctica privada de la profesión, incluyendo la notaría, por abogados que son empleados de la Rama Ejecutiva del Gobierno.

"Como hemos señalado, la *formulación de normas que regulen la materia* que es objeto del presente estudio, compete a cada agencia. Vale decir, la fijación de normas que deberán regir el trabajo remunerado que realizan sus abogados, incluyendo el ejercicio de la notaría, dentro y fuera de las horas laborables, corresponde a cada agencia en particular."

■ No hay tal conflicto, que ni se define en ninguno de los Cánones de Ética, ni constituye infracción a la prevención general del Canon 38 contra la *apariencia* de conducta profesional impropia. La esencial liberalidad de la profesión jurídica no está coartada porque su practicante sea además médico, contador público, ingeniero o técnico de laboratorio. Las profesiones se enriquecen con la universalidad de conocimientos y vocaciones a que alcanza su ámbito académico, y la profesión de abogado, como ninguna otra, extiende su *ilustración* a confines impredecibles. En nada disminuye el honor y la dignidad de la profesión que el abogado tenga y cumpla con otra profesión o empleo lícito. Esta actividad dual no implica sumisión de la conducta profesional al dictamen ético de los superiores en su empleo; los campos quedan claramente deslindados y el de la agencia se circunscribe a lo reglado en la Ley de Personal. La tutela ética del abogado por este Tribunal, sin importar la intensidad o modestia de su práctica, no se comparte con funcionario ni organismo alguno.

■ Se palpa una tendencia a acudir a este Tribunal con quejas de conducta profesional, en realidad reclamaciones privadas contra abogados que propiamente tienen un foro adecuado en el Tribunal General de Justicia. El Tribunal Supremo que tiene una facultad de disciplina, pero también un deber de protección sobre la profesión jurídica, estará siempre alerta a quejas que con manto de ética tienden a disimular un conflicto de Derecho civil entre el abogado y su adversario.

Los Cánones de Ética son para aplicarse con la energía medular que sostiene una profesión limpia y digna de la confianza pública, sin caer en extremos que nos conviertan más que en foro ético, en instrumento de discrimen contra la profesión de abogado. Ahora que la libertad de expresión, la reclamación de derechos y de remedio contra agravios con frecuencia sufren en su gran valía la distorsión de agentes mal informados o inescrupulosos, se yergue con austero re-

628

lieve la previsora preceptiva de nuestra Constitución al declarar que la dignidad del ser humano es inviolable (Art. II, Sec. 1), y que toda persona será protegida contra ataques abusivos a su honra, a su reputación y a su vida privada y familiar (Art. II, Sec. 8).

█ La queja contra este abogado carece de toda legitimidad y debe rechazarse como uso espurio de los recursos provistos para investigar la conducta de los abogados. *Archívese.*

El Juez Asociado Señor Negrón García no intervino.