METROPOLITANA DE PRÉSTAMOS, INC., demandante y apelado, *v.* JOSÉ RAÚL LÓPEZ DE VICTORIA BRAS, ETC., demandados y apelantes.

Número: CC-96-68          Resuelto: 1ro de noviembre de 1996

*Gloria M. Sierra Enríquez*, abogada de la parte apelada; *José López De Victoria, pro se.*

— o —

Opinión concurrente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Hernández Denton.

Equivocarse en la apreciación de la prueba, al igual que equivocarse en la aplicación de la ley, es un error en el cual podemos incurrir todos los que llevamos sobre nuestros hombros la difícil tarea de impartir justicia. Y un abogado tiene perfecto dere-

cho a plantearlo en apelación, a nombre de su cliente, si considera que aquél es manifiesto. Con ello cumple a cabalidad su gestión profesional.

Actuar "con mente prevenida y con *pasión y prejuicio*" al llevar a cabo su función judicial, no sería un mero error del juzgador: sería el incumplimiento esciente del deber de honradez de conciencia, que hace del Juez un símbolo y del Tribunal un templo en los conglomerados civilizados. Por el sitio que ocupan en la sociedad y por su condición de funcionarios de los tribunales, los *abogados deben ser cautelosos al hacer a un Juez imputaciones de tal magnitud y alcance, y ello solamente si están convencidos, en lo más profundo de sus conciencias —a la vez no prevenidas— de la certeza de sus afirmaciones*, y entonces para exigir la verdadera responsabilidad que tan grave desviación del deber conlleva. *En el caso de autos, no obstante, creemos que el abogado, aunque equivocado, creía de buena fe en la validez de su queja.* (Énfasis suplido.) *Cordero v. Rivera*, 74 D.P.R. 586, 609 (1953).

Estas expresiones del Tribunal, de hace más de cuatro (4) décadas, continúan vigentes. *Coincidimos* con la sentencia de este Tribunal que resolvió que era improcedente dictar sentencia sumaria y desestimar la reconvención del Lcdo. José R. López de Victoria.

## I

En su apelación ante el Tribunal de Circuito, el licenciado López de Victoria imputó *parcialidad y prejuicio*(¹) al Juez Superior, Hon. Manuel J. Vera Vera. En respuesta a esa alegación, el foro intermedio expresó:

La conducta del apelante de levantar injustificadamente una imputación de parcialidad contra el foro de Primera Instancia constituye una seria infracción al Canon 9 de los de Etica Pro-

---

(¹) El licenciado López de Victoria adujo que su reconvención fue negada sin fundamentos y sin que la parte contraria lo hubiera solicitado. A juicio suyo, era improcedente la sentencia sumaria de instancia. Argumentó también que el tribunal de instancia había actuado "bajo prejuicio y parcialidad" al formular sus determinaciones. Se basó en que las conclusiones del juez sentenciador eran contradictorias con lo solicitado por la demandante y que también eran inconsistentes con lo dicho antes en una conferencia judicial. Estimó que ello constituía "un abuso de discreción y una intervención prejuiciada".

fesional([2]) y macula la dignidad y reputación del Poder Judicial de nuestro país. Véase, *In re Cardona Álvarez*, 116 D.P.R. 895, 906 (1986); *In re Andréu Ribas*, 81 D.P.R. 90, 120 (1959). *Constituye, además, una violación de la Regla 29(B) del Reglamento de este Tribunal.*([3]) Este tipo de táctica merece nuestro más enérgico rechazo, así como la imposición de severas sanciones. (Énfasis suplido.)([4]) Petición, Apéndice, pág. 141.

Concluyó el reputado Tribunal de Circuito (Hons. Brau Ramírez, Colón Birriel y Ramos Buonomo, Jueces), que el licenciado López de Victoria fue temerario al presentar un recurso frívolo y dirigido a demorar los procedimientos. Le impuso las costas del recurso y, *conforme "las Reglas 51 y 29(B) del Reglamento de este Tribunal*, la suma de $1,000.00 por concepto de honorarios de abogado a favor de la parte apelada". Petición, *supra*, pág. 143.

---

([2]) Lee:

"El abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados, el abogado debe intervenir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.

"El deber de respeto propio para con los tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa." Canon 9 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

([3]) Dispone en lo pertinente:

"(b) La firma del abogado o de la parte constituirá una certificación por el firmante de haber leído la alegación, moción o escrito y de que, conforme a su mejor conocimiento, información y creencia, formadas después de una investigación razonable, la misma está bien fundada en los hechos y autorizada por ley o por un argumento de buena fe sobre la prórroga, enmienda o derogación de la ley, y de que no *ha sido interpuesta con algún fin impropio, tal como hostigar, causar demora innecesaria o aumentar* [*in*]*necesariamente el costo del litigio.*

"(c) Si una alegación, moción o escrito fuere firmado en violación de esta sección, *el Tribunal*, a moción de parte o *a iniciativa propia, impondrá a la persona firmante, a la parte representada, o a ambas, la sanción que estime adecuada.*" (Énfasis suplido.) Regla 29(b) y (c) del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII.

([4]) Adviértase que la parte que hemos enfatizado ha sido omitida por la mayoría en el *per curiam*.

## II

De entrada, aclaramos que no estamos adjudicando si la conducta del licenciado López de Victoria infringió el Canon 9 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX; no tenemos ante nos una acción disciplinaria a esos efectos. Adviértase, además, que el Tribunal Apelativo no le impuso sanción alguna por violar los cánones del Código de Ética Profesional.

Reconocemos, además, la facultad de los jueces de apelaciones y de primera instancia para sancionar a aquellos abogados que, a través de sus escritos, mancillan el buen nombre y la reputación de los tribunales y de los miembros de la judicatura. Elaboremos.

*Primero*, el Canon XVII del Código de Ética Judicial, 4 L.P.R.A. Ap. IV-A, faculta a los jueces, cuando sea necesario, a "elogiar o censurar la conducta de los abogados pero, hasta donde sea posible, deberá hacerlo desde el estrado o en sus resoluciones o sentencias y siempre con la debida moderación y ecuanimidad". Precisamente, eso hizo en su sentencia el foro apelativo; censurar la conducta como abogado.

*Segundo*, la Regla 9 de Procedimiento Civil, 32 L.P.R.A. Ap. III, autoriza a *todos los jueces de nuestro sistema judicial* a sancionar los abogados que introduzcan en sus escritos *"materias difamatorias o indecorosas o se utiliza lenguaje ofensivo o soez"*. (Énfasis suplido.)

*Tercero*, la Regla 29 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII, faculta a sus magistrados para sancionar a los abogados que interponen escritos "con algún fin impropio, tal como hostigar, causar demora innecesaria o aumentar [in]necesariamente el costo del litigio".([5]) Precisamente, por entender que el li-

---

([5]) Este lenguaje corresponde a la regla vigente el 26 de enero de 1996. Cabe destacar que la Regla 69 del Tribunal de Circuito de Apelaciones del Estado Libre Asociado de Puerto Rico, 4 L.P.R.A. Ap. XXII-A (de las que entraron en vigor el 1ro de mayo de 1996), recoge esencialmente el mismo lenguaje.

cenciado López de Victoria intentaba atrasar los procedimientos, el foro apelativo lo sancionó.

*Cuarto*, no procede equiparar las expresiones y sanción impuesta por el Tribunal de Circuito de Apelaciones a una acción disciplinaria. Se trata de una medida preventiva, en defensa de la dignidad del Foro, para evitar posibles violaciones a los cánones del Código de Ética Profesional. Así, en *K-Mart Corp. v. Walgreens of P.R., Inc.*, 121 D.P.R. 633, 637–638 (1988), resolvimos que "una moción de descalificación no constituye de por sí una acción disciplinaria contra los abogados. Se reconoce como una medida preventiva para evitar posibles violaciones a los Canones de Ética Profesional. Por consiguiente, los tribunales de primera instancia ... pueden entender y resolver dichas mociones ...".

*Quinto*, los Tribunales de Circuito y de Primera Instancia, en el ejercicio de su poder inherente de supervisar la conducta de los abogados que postulan ante sí, deben tener facultad para imponer las sanciones que estimen adecuadas.

Tenemos que confiar en el ejercicio ponderado y juicioso de nuestros jueces. No somos los únicos facultados para reconocer cuando un abogado ha atentado contra la imagen y dignidad de un tribunal.

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se une la Juez Asociada Señora Naveira de Rodón.

Es menester precisar los hechos y las controversias del caso de epígrafe.

El 6 de febrero de 1991, Metropolitana de Préstamos, Inc. (en adelante Metropolitana) presentó en el Tribunal Superior, Sala de Mayagüez, una acción en cobro de dinero contra el Lic. José R. López de Victoria, su esposa Sara

Latoni y la sociedad de gananciales integrada por éstos. Adujo que los demandados habían obtenido un préstamo del Banco Popular de Puerto Rico y que aún adeudaban $36,647.01 de éste, cantidad que estaba vencida desde 1990. Metropolitana indicó en su demanda que comparecía como acreedora de la referida deuda porque había adquirido del Banco Popular todo derecho, título e interés sobre el préstamo en cuestión y era la tenedora del pagaré correspondiente.

Luego de varios incidentes procesales y de que la parte demandada se acogiese a los beneficios de la Ley Federal de Quiebras el 15 de marzo de 1995, los demandados contestaron la acción y alegaron, *inter alia*, que el préstamo en cuestión había sido cobrado ya por el Banco Popular, acreedor original, de unos certificados de ahorros que los demandados tenían con dicho banco. Los demandados, además, presentaron una reconvención y alegaron que la demanda de Metropolitana era viciosa e improcedente, que le había causado angustias mentales a los demandados y que le había afectado su crédito negativamente.

El 8 de junio de 1995 se celebró una conferencia sobre el estado de los procedimientos del caso ante el Hon. Juan Camacho Fabre, juez del Tribunal Superior de Puerto Rico, Sala de Mayagüez. Según consta de la minuta de dicha conferencia, allí se admitió por las partes: (1) que el préstamo en cuestión se había realizado; (2) que el mismo estaba vencido y era exigible, y (3) que el demandado había entregado al Banco Popular unos certificados de ahorro que pudieron haber saldado parcialmente la deuda. A la luz de estas admisiones, el tribunal determinó expresamente que la *única controversia* pendiente para disponer del caso era la de *si alguna cantidad de dichos certificados había sido utilizada como pago del préstamo en cuestión.* El tribunal, además, le dio un término de treinta (30) días a las partes para producir los documentos relativos a la referida controversia, y *señaló allí una conferencia con an-*

*telación al juicio para el 8 de septiembre de 1995 para atenderla.*

Así las cosas, con fecha de 19 de junio, pero presentado el 21 de junio de 1995, el *Banco Popular*, no Metropolitana, sometió al tribunal una moción mediante la cual alegaba escuetamente, sin mayor explicación, que era el dueño y tenedor del pagaré objeto de este pleito y que comparecía para someter los documentos solicitados por el tribunal en la conferencia sobre el estado de los procedimientos de 8 de junio de 1995. Acompañó la moción con: (1) una declaración jurada de una empleada del Banco indicando que los demandados habían obtenido el préstamo en cuestión y que la deuda estaba vencida y era líquida y exigible; (2) una copia certificada del pagaré, y (3) una copia de un documento técnico que alegadamente constituía el historial de pagos del préstamo.[1]

El Banco, mediante la referida moción —y sin acreditar cómo o cuándo había readquirido el pagaré en cuestión— también solicitó que se dictara sentencia sumaria y que se ordenara a los demandados a pagar la cantidad que había sido reclamada en la demanda de Metropolitana.

*Nada se indicaba en la moción aludida sobre la alegación de los demandados relativa al pago parcial del préstamo mediante la supuesta entrega al banco de determinados certificados de ahorro. Tampoco se hacía referencia alguna a la controversia sobre el particular que había sido identificada el 8 de junio por el tribunal como la única cuestión pendiente de resolver.*

El mismo día en que el Banco Popular compareció a solicitar que se dictase sentencia sumaria en este caso, la parte demandada le escribió una carta a los abogados de la parte demandante, sugiriendo una reunión para preparar el informe correspondiente para la conferencia con antelación al juicio que ya estaba fijada para el 8 de septiembre. Consta en el expediente de autos que uno de los abogados

---

[1] Se trata de un documento lleno de abreviaturas, códigos y cifras ininteligible para el que no conoce cómo descifrarlo.

de la parte demandante, el mismo abogado que suscribió la solicitud de sentencia sumaria del Banco Popular presentada el 21 de junio de 1995, contestó la referida carta el 26 de junio de 1995 y confirmó que la reunión aludida podía celebrarse el 30 de agosto de 1995.

Dos meses más tarde, el 28 de agosto de 1995, la parte demandada solicitó una prórroga para contestar la solicitud de sentencia sumaria presentada por el Banco Popular. Alegó que ya había negado los hechos de la demanda, y que para sostener su posición necesitaba inspeccionar determinados documentos originales que estaban en posesión del Banco. Solicitó también que se pospusiese la conferencia con antelación al juicio señalada para el 8 de septiembre hasta tanto pudiese examinar los documentos aludidos. Alegó que no había podido producir los documentos discutidos en la conferencia de 8 de junio porque, debido al receso judicial de verano y a un calendario cargado de señalamientos, no había podido verificar dichos documentos.

Ese mismo día 28 de agosto se archivó en autos un dictamen del Tribunal Superior de Mayagüez mediante el cual se declaraba con lugar la solicitud de sentencia sumaria del Banco Popular. Dicha sentencia fue emitida por un juez (Hon. Manuel J. Vera) distinto al que había señalado para el 8 de septiembre una conferencia con antelación al juicio para dilucidar, en lo posible, la controversia de si el préstamo en cuestión había sido pagado de algún modo por medio de unos certificados de ahorros.

En la referida sentencia sumaria, el tribunal se limitó a señalar que se había efectuado un préstamo y que éste estaba vencido y era exigible. Señaló que la parte demandada no había replicado la moción de sentencia sumaria del demandante ni había demostrado que existía controversia alguna en cuanto a lo adeudado, por lo que entendía que no existía controversia real sobre algún hecho material que impidiese dictar sentencia sumaria. *Nada dijo el juez en su sentencia, ni siquiera lo mencionó, de que estaba señalada ya una conferencia sobre antelación al juicio en el mismo caso para dilucidar la controversia que otro juez de*

*la misma Sala antes había determinado que existía sobre el pago de lo adeudado.*

El juez sentenciador, además, limitó su dictamen sumario a que el pago de lo adeudado debía hacerlo únicamente el codemandado López de Victoria. Aunque reconoció que la demanda había sido presentada también contra la esposa de éste y la sociedad de gananciales existente entre ellos, y que se había alegado que López de Victoria hizo el préstamo como administrador de la sociedad y para beneficio de ésta, resolvió el juez sentenciador, sin que nadie lo planteara, que de los documentos presentados por el promovente surgía que el préstamo se había tomado con la sola firma del esposo codemandado, por lo que ni la esposa ni la sociedad de gananciales respondían.

Finalmente, el foro a quo también desestimó sumariamente la reconvención de los demandados con la única explicación de que era "claramente improcedente".

El codemandado López de Victoria solicitó la reconsideración de la sentencia y pidió también la determinación de hechos adicionales. Denegadas ambas solicitudes, apeló al Tribunal de Circuito de Apelaciones oportunamente.

En esencia, en su apelación ante el Tribunal de Circuito, la parte demandada alegó que su reconvención había sido denegada sin fundamentos y sin que la parte contraria lo hubiera solicitado, y que la sentencia sumaria dictada en instancia no procedía. También adujo que el tribunal de instancia había actuado "bajo prejuicio y parcialidad" al formular las determinaciones que hizo en la sentencia sumaria. Basó esta alegación muy someramente en que el juez sentenciador había hecho unas conclusiones que eran contradictorias con lo solicitado por la parte demandante, y que había hecho unas determinaciones incompatibles con lo resuelto en una conferencia judicial previa en la cual dicho juez no había estado presente. Estimó el apelante que tal proceder constituía "un abuso de discreción y una intervención prejuiciada".

El 26 de enero de 1996, el Tribunal de Circuito de Apelaciones, de la región de Mayagüez y Aguadilla, Hon. Brau

Ramírez, Juez ponente, confirmó la sentencia apelada. Concluyó el foro apelativo que no se había cometido ninguno de los errores presentados. Determinó también que:

> La conducta del apelante de levantar injustificadamente una imputación de parcialidad contra el foro de Primera Instancia constituye una seria infracción al Canon 9 de los de Etica Profesional y macula la dignidad y reputación del Poder Judicial de nuestro país. ... Este tipo de táctica merece nuestro más enérgico rechazo, así como la imposición de severas sanciones.

Resolvió asimismo que la parte apelante había sido temeraria y que su recurso era frívolo y/o dirigido a dilatar los procedimientos, y le impuso el pago de las costas del recurso, más $1,000 de honorarios de abogado.

Inconforme, la parte apelante acudió a nos en *certiorari*. Reiteró la comisión de los errores alegados ante el foro apelativo y, además, adujo que también había errado el Tribunal de Circuito de Apelaciones "al imponer sanciones al apelante e indicar violaciones a los Cánones de Etica Profesional por exponer sus derechos, criterios y defender sus intereses".

El 12 de abril de 1996 le concedimos un término a la parte apelada para que mostrara causa por la cual no debíamos revocar la sentencia del Tribunal de Circuito de Apelaciones. Dicha parte compareció el 13 de mayo de 1996.

## I

La sentencia del tribunal de instancia contiene dos errores principales, relacionados entre sí, que el foro apelativo debió haber reconocido como tal y no lo hizo.[2]

En primer lugar, el juez que dictó la sentencia sumaria dictaminó que aquí no existía controversia real sobre nin-

---

[2] Podrían existir otros errores, que fueron planteados por la parte demandada apelante, relativos: (a) a la exclusión de la sociedad de gananciales del dictamen de instancia, y (b) a la intervención del Banco Popular como parte sin haber acreditado su interés debidamente. Pero no es necesario dilucidarlos, en vista de lo que resolvemos sobre las cuestiones más centrales del caso.

gún hecho material del caso, *a pesar de que otro juez de esa misma Sala ya había determinado que sí existía una controversia* sobre si la deuda había sido pagada o no, mediante determinados certificados de ahorros, y había señalado una conferencia judicial para intentar dilucidarla. El juez sentenciador no explicó por qué dejaba sin efecto lo dictaminado por el otro juez; ni siquiera mencionó el asunto. Es cierto que la parte demandada no presentó una oposición oportuna a la moción de sentencia sumaria ni había sometido documentos acreditativos del pago de la deuda. Pero, aun así, no había suficiente justificación en este caso para acceder a la moción de sentencia sumaria del demandante. *Flores v. Municipio de Caguas*, 114 D.P.R. 521 (1983).

Nótese que los documentos presentados por el demandante junto con su moción de sentencia sumaria no conjuraban realmente la controversia particular que estaba ya trabada ante el foro de instancia. Esos documentos sólo demostraban: (1) que el préstamo se había realizado y (2) que estaba vencido y era exigible. *Tales hechos ya habían sido admitidos por las partes en la conferencia judicial celebrada el 8 de junio de 1995.* Los documentos, pues, no añadían nada nuevo a lo acordado previamente; no arrojaban luz sustancial en cuanto a la controversia concreta pendiente, de si el préstamo había sido pagado mediante la entrega de determinados certificados de depósito que el deudor alegadamente tenía con el banco.

A la luz del alcance limitado de los documentos presentados por el demandante, y tomando en consideración que un juez se había expresado ya respecto a la existencia de una controversia de hechos —y que incluso estaba señalada próximamente una conferencia con antelación al juicio precisamente para dilucidar dicha controversia en lo posible— no procedía que se dictara una sentencia sumaria en tales circunstancias. *No existía aquí la clara certeza sobre todos los hechos de la controversia, que es necesaria para que pueda obviarse un juicio en los méritos.* No tenía el juez sentenciador toda la verdad sobre todos los hechos

pertinentes, por lo que no era aconsejable dictar la sentencia sumaria sin siquiera darle al demandado una oportunidad de mostrar causa por la cual ésta no debía dictarse. Como señalamos en *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720–721 (1986):

> La sentencia sumaria es un *remedio extraordinario* que sólo debe ser concedido cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de las alegaciones que no hayan sido refutadas por la evidencia presentada con la moción. La sentencia sumaria *sólo debe dictarse en casos claros*, cuando el tribunal tenga ante sí *la verdad sobre todos los hechos pertinentes.* (Énfasis suplido y citas omitidas.)

En este caso, el tribunal de instancia debió señalar una vista en su fondo y permitirle a la parte demandada dilucidar adecuadamente su alegación de que había pagado, al menos parcialmente, el préstamo en cuestión, no mediante los ordinarios pagos mensuales, sino por la cancelación de determinados certificados de ahorro. Si luego de tener esa oportunidad, la parte demandada no lograba sostener dicha alegación, y quedaba demostrado que la misma se había hecho frívolamente, entonces el foro de instancia tenía a su alcance la imposición de las sanciones correspondientes.

Como no procedía que se dictase la sentencia sumaria a favor de la parte demandante, tampoco debió desestimarse, como se hizo en la reconvención de la parte demandada. Reiteradamente hemos resuelto que la desestimación de una acción procede sólo si el reclamante no tiene derecho a ningún remedio bajo cualesquiera hechos que éste pueda probar en juicio a base de lo que ha alegado en la demanda. Frente a una moción para desestimarla, la acción debe ser interpretada lo más liberalmente posible a favor del reclamante. La privación a un litigante de su día en corte es una medida procedente sólo en casos extremos. *Candal v. CT Radiology Office, Inc.*, 112 D.P.R. 227 (1982);

*Moa v. E.L.A.*, 100 D.P.R. 573 (1972); *Martín Santos v. C.R.U.V.*, 89 D.P.R. 175 (1963).

Aquí no era prudente considerar la desestimación de la reconvención hasta tanto se hubiese dilucidado claramente la controversia pendiente sobre los certificados de ahorros. No procedía, pues, tal desestimación.

## II

Es menester que nos expresemos sobre la determinación que hizo el Tribunal de Circuito de Apelaciones de que el apelante cometió una seria violación de los cánones del Código de Ética Profesional que ameritaba la imposición de sanciones severas.

Como se sabe, cualquier acción disciplinaria contra un abogado por conducta impropia en violación a los cánones del Código de Ética Profesional le compete única y exclusivamente al Tribunal Supremo de Puerto Rico. *K-Mart Corp. v. Walgreens of P.R., Inc.*, 121 D.P.R 633 (1988). Se trata de una función inherente de este Tribunal. *In re Freytes Mont*, 117 D.P.R. 11 (1986); *Colegio de Abogados de P.R. v. Barney*, 109 D.P.R. 845 (1980); *In re Liceaga*, 82 D.P.R. 252 (1961); *In re Abella*, 67 D.P.R. 229 (1947); *In re González Blanes*, 65 D.P.R. 381 (1945). Y es una función que este Foro no la comparte con funcionario u organismo alguno. *In re Álvarez Crespo*, 110 D.P.R. 624 (1981). Consiste, claro está, de una facultad que ejercemos en armonía con el debido proceso de ley, con arreglo a un procedimiento formal mediante el cual se le informa al abogado de los cargos en su contra y se le ofrece amplia oportunidad para contestarlos y defenderse. *In re Pagán*, 71 D.P.R. 761 (1950).

Los otros tribunales del país tienen facultad para tomar medidas dirigidas a supervisar y controlar la conducta de los abogados que postulan ante sí. Ello no constituye un ejercicio del poder de disciplinar a los abogados, sino más bien un aspecto de la autoridad que tienen los foros judiciales para mantener el orden y dirigir sus procedimientos.

Entre las medidas que tienen los tribunales para evitar actos disruptivos de los abogados mientras postulan ante ellos están la condena por desacato criminal, *Pueblo v. González Mattews*, 109 D.P.R. 683 (1980), y la descalificación del abogado. *K-Mart Corp. v. Walgreens of P.R., Inc.*, supra. Véanse, además: *In re Orlando Roura*, 119 D.P.R. 1 (1987); *In re Padilla*, 87 D.P.R. 236 (1963).

En el caso de autos, la conducta impropia del abogado, si es que hubo alguna, no atentó de modo alguno contra la autoridad del Tribunal de Circuito de Apelaciones o la buena marcha de los procedimientos de ese foro apelativo. No perturbó el orden de ese tribunal. Por ello, como dicho foro lo que tenía ante sí era sólo una supuesta base para que se disciplinase al abogado apelante, lo que procedía era que, mediante resolución fundamentada debidamente, dicho tribunal formulase la queja correspondiente y la remitiese ante nos, para este Tribunal darle el curso reglamentario. No podía ese foro adjudicar por su cuenta la supuesta conducta impropia de éste, máxime cuando no se le anticipó el asunto al abogado apelante ni se le dio oportunidad para defenderse.

Nótese que no está en controversia aquí la facultad del Tribunal de Circuito de Apelaciones para imponer sanciones cuando algún abogado en un caso ante ese foro actúa deliberadamente para causar demoras y dilatar los procedimientos. Todos los foros judiciales tienen la autoridad de imponer sanciones razonablemente cuando algún abogado comparece ante ellos y actúa de manera claramente frívola o temeraria.

Lo que nos concierne aquí es la actuación del foro apelativo, al *adjudicar expresamente* una supuesta infracción al Canon 9 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, sin siquiera darle al letrado contra quien ese foro *determinó* tal violación al Código de Ética, *alguna oportunidad de defenderse*. No está claro que la sanción impuesta por dicho tribunal en este caso no respondía de modo alguno a la imputada violación del Canon 9, *supra*. Pero no cabe ninguna duda de que el Tribunal de Circuito de Ape-

laciones resolvió formalmente que dicho canon había sido violado por el licenciado López de Victoria y que ello se resolvió sin celebrar un procedimiento disciplinario.

Además, es menester tener en cuenta aquí que el Canon 9, *supra*, no es una *mordaza* que le prohíba a los abogados expresar sus quejas cuando entienden que han sido objeto de alguna acción judicial injustificada. En nuestro sistema de vida democrático, los abogados disfrutan de la fundamental libertad de expresión, como cualquier otra persona, y pueden protestar contra los agravios que creen haber sufrido, aunque tal protesta se refiera a una acción judicial. Más aún, nuestro ideal de una Judicatura de excelencia, de raíz, no sería realizable si los abogados estuviesen impedidos de criticar la conducta judicial. Por eso, el propio Canon 9, *supra*, obliga a los letrados a actuar "contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa". Por todo ello, los jueces debemos cuidarnos de no caer en la sensiblería, o en la hipérbole, cuando los abogados critican nuestras actuaciones. No podemos estar viendo supuestas violaciones a la "dignidad del Foro" cada vez que algún abogado se queja de pasada de un proceder judicial.

Claro está, el respeto que los abogados le deben a los tribunales requiere que los planteamientos críticos suyos no constituyan "ataques injustificados" contra los jueces. Es decir, tales críticas no deben constituir arremetidas para denigrar y ofender, carentes de fundamento. En tales casos, cuando claramente se intenta agredir de modo notorio y sin razón el buen nombre o el orden institucional judicial, existe una causa para disciplinar al abogado que realizó el ataque injustificado. Ello, luego de que *este Tribunal*, mediante los procedimientos correspondientes, constate que hubo tal ataque.