# 2006 DTA 88

### TRIBUNAL DE APELACIONES
### REGIÓN JUDICIAL DE FAJARDO

JOSE ALBERTO LUGO LEBRÓN
Demandante-Recurrido

v.

DANIEL W. SHELLEY; JOSÉ LUIS NOVAS DUEÑO; PUERTO DEL REY, INC.
Demandados-Peticionario el último

Núm. KLCE-05-01750

San Juan, Puerto Rico, a 19 de junio de 2006

Panel integrado por su Presidente, el Juez Martínez Torres,
la Juez Cotto Vives y el Juez Aponte Jiménez

Aponte Jiménez, Juez Ponente

**TEXTO COMPLETO DE LA RESOLUCIÓN**

Nos solicita Puerto del Rey, Inc. que revoquemos la resolución emitida mediante la cual el Tribunal de Primera Instancia, Sala de Fajardo (*"TPI"*), le denegó su petición para que se decretase sumariamente la desestimación de la demanda presentada en su contra por el demandante-recurrido. Se basó dicho foro en que existiendo controversia en cuanto a hechos esenciales y materiales, hacen necesaria la celebración de una vista.

Por los fundamentos que a continuación exponemos, denegamos expedir el auto de *certiorari* solicitado. Remitimos el asunto al TPI para la continuación de los procedimientos

Los hechos medulares no están en controversia. El demandante-recurrido, José Alberto Lugo Lebrón, presentó demanda contra Daniel W. Shelley, José Luis Dueño Quiñones y Puerto del Rey, Inc. Alegó, *inter alia*, que en el 1991 obtuvo una sentencia en el caso CS89-1861 donde se condenó a Puerto del Rey Yacht, Inc. a satisfacerle $36,349.50 y otras partidas. Adujo que Puerto del Rey, Inc., dueña de las acciones de su subsidiaria, Puerto del Rey Yacht, Inc., fraudulentamente traspasó a otra corporación todos los activos de esta última con el fin de evitar el pago de la sentencia. Agregó que Puerto del Rey Yacht Inc. es un *alter ego* de la codemandada Puerto del Rey, Inc. y que como tal es responsable de sus deudas.

Ambas partes, en lo que aquí concierne, solicitaron que el TPI dictase sentencia sumaria. Se basaron en que no existía controversia sobre los hechos relevantes. A esos fines, los estipularon. Por su pertinencia, los reproducimos:

" 1) El 20 de julio de 1988, José Dueño Quiñones y Puerto del Rey Yacht Sales, Inc. llevaron a cabo un contrato de venta de bienes muebles mediante el cual Puerto del Rey Yacht Sales, Inc. vendió al primero una embarcación.

2) Puerto del Rey Yacht Sales, Inc. operaba un local en Plaza Las Américas. En octubre de 1988, cesó operaciones allí y vendió sus oficinas en ese local por $20,000.

3) Se dedicaba a la venta de embarcaciones de placer y sus activos eran embarcaciones de tal naturaleza que estaban afecta a préstamos y garantizaban unos pagarés emitidos por la corporación A su vez, dichos préstamos tenían la garantía personal de sus accionistas, Puerto del Rey, Inc.

4) El primero (1) de noviembre de 1988 alegando incumplimiento de parte de Puerto del Rey Yacht Sales, Inc., Dueño, después de haber pagado el pronto por la embarcación que adquirió, dejó sin efecto el contrato de compraventa y reclamó el pronto pago de $17,500. Lo hizo por carta. Devolvió la lancha que compró.

5) El 18 de noviembre de 1988, el Lcdo. José A. Novas, representando a Puerto del Rey Yacht Sales, Inc. le contestó al Sr. Dueño expresándole lo siguiente:

"[q]ue Puerto del Rey Yacht Sales, Inc. ha descontinuado sus operaciones y relacionado con la venta de embarcaciones de placer. Las personas que estaban a cargo de dichas operaciones se encuentran totalmente desvinculadas de mi cliente y es poco o ninguna la información que hasta este momento hemos podido recopilar en relación con la reclamación que usted plantea." ■

6) Para el año contributivo con terminación al 31 de diciembre de 1988, año de la transacción, los activos de Puerto del Rey Yacht Sales, Inc. eran $538,956 y su pasivo $946,640.

7) Los pasivos y "equity" de Puerto del Rey Yacht Sales, Inc. era negativo en la suma de $150,518.11.

8) El 20 de julio de 1989, Puerto del Rey Yacht Sales, Inc., a través de su secretaria, Julia Díaz, reconoció un contrato de compraventa, mediante el cual se vendía la lancha "La Reina", la cual era la misma que Dueño había comprado y después devolvió por alegados incumplimientos de Puerto del Rey Yacht Sales, Inc.

9) El 26 de julio de 1989, la Sra. Julia Díaz, como secretaria de Puerto del Rey Yacht Sales, Inc., vendió una lancha marca "Sun Runner 24".

10) El 2 de agosto de 1989, la Sra. Julia Díaz, como secretaria de Puerto del Rey Yacht Sales, Inc., vendió a tercera persona la lancha "Tirana".

11) El 3 de agosto de 1989, la Sra. Julia Díaz, como secretaria de Puerto del Rey Yacht Sales, Inc., vendió otra lancha marca "Sun Runner 29".

12) El 18 de diciembre de 1989, según consta del emplazamiento expedido en dicha fecha, el Sr. José Rafael Dueño Quiñones demandó a Puerto del Rey Yacht Sales, Inc., en el Tribunal Superior de Humacao, Caso Núm. CS89-1861, por cobro de dinero e incumplimiento de contrato y otros extremos. Alegó un incumplimiento en relación con la compra de una lancha de placer a Puerto del Rey Yacht Sales, Inc. allá para julio de 1988. Se emplazó al Presidente de Puerto del Rey Yacht Sales, Inc., el Sr. Daniel Shelley.

13) Puerto del Rey Yacht Sales, Inc. contestó a través del Lcdo. José Luis Novas Dueño. Para esa fecha, el Lcdo. Novas era también abogado de Puerto del Rey, Inc.

14) El 13 de marzo de 1990, el Sr. Daniel W. Shelley, como presidente de Puerto del Rey Yacht Sales, Inc., juramentó un certificado de enmienda al certificado de incorporación de Puerto del Rey Yacht Sales, Inc. para cambiar su nombre a Neptune Yacht Sales, Inc.

15) En esa misma fecha, 13 de marzo de 1990, el Sr. Daniel W. Shelley, como Presidente de Puerto del Rey, Inc., y el Sr. Félix Molina, llevaron a cabo un contrato de compraventa mediante el cual el segundo adquirió las acciones de la corporación Puerto del Rey Yacht Sales, Inc.

16) El contrato disponía entre otras cosas que Puerto del Rey, Inc. vendía al Sr. Félix Molina, el ciento por ciento de las acciones de Puerto del Rey Yacht Sales, Inc. Como parte de la transacción, Puerto del Rey, Inc. condonó a Puerto del Rey Yacht Sales, Inc. la deuda de $480,932.00 que Puerto del Rey Yacht Sales, Inc. tenía con Puerto del Rey, Inc. a cambio de que Puerto del Rey Yacht Sales, Inc. le condonara a una deuda por la suma de $149,269.25.

17) Asimismo, Puerto del Rey, Inc. asumió la responsabilidad por dos préstamos que tenía Puerto del Rey Yacht Sales, Inc. que sumaban $180,000.00.

18) En el contrato de compraventa de acciones entre Puerto del Rey, Inc. y el Sr. Félix Molina, el Sr. Daniel W. Shelley, quien había actuado como presidente de Puerto del Rey Yacht Sales, Inc., renunció a su cargo de Director y Oficial de dicha corporación.

19) El contrato dispuso que todos los otros pasivos de la corporación que no fueran los préstamos de $50,000.00 y $130,000.00 que tenía Puerto del Rey Yacht Sales, Inc. por los cuales Puerto del Rey, Inc. asumió responsabilidad, continuarán "siendo activos y pasivos de la corporación".

20) Puerto del Rey-Yacht Sales, Inc. se comprometió a ejercer sus mejores esfuerzos para que Neptune Yacht Sales, Inc. continuara como distribuidora de los manufactureros de las líneas de lanchas "Rampage", "Tolly Craft" "Sun Runner" y "Maratón".

21) Para el 1990, los oficiales y directores de Puerto del Rey Yacht Sales, Inc., ahora llamada Neptune Yacht Sales, Inc., eran Félix Molina Cosme, Héctor E. Ruso y Manuel Bello Franqueiro.

22) En el caso del Sr. José Dueño en contra de Puerto del Rey Yacht Sales, Inc., el 13 de septiembre de 1991 se eliminó la contestación a Puerto del Rey Yacht Sales, Inc. por incumplimiento procesal y se dictó sentencia sumaria parcial en su contra y a favor de Dueño por la suma de $16,349.50.

23) Posteriormente, se dictó una sentencia final contra Puerto del Rey Yacht Sales, Inc. el 13 de diciembre de 1991 por $20,000 de angustias mentales a Dueño, más los $16,349.50 de daños económicos que se habían adjudicado el 13 de septiembre.

24) El 10 de julio de 1992 no habiendo hecho efectiva la sentencia, Dueño vendió, cedió y traspasó la misma a Atlantic Finance & Real Estate Corp., representada por su presidente, José A. Lugo Lebrón.

25) El 30 de mayo de 1996, Atlantic Finance & Real Estate Corp. vendió, cedió y traspasó todo su interés en la sentencia al demandante-recurrido, al Sr. José A. Lugo Lebrón.

26) Con fecha 21 de agosto de 1997, el Sr. Lugo, por derecho propio, estableció una acción contra Daniel

*W. Shelley, José Luis Novas Dueño y Puerto del Rey, Inc. Alegó que la venta de las acciones de Puerto del Rey Yacht Sales, Inc. celebrada el 13 de marzo de 1990 entre Félix Molina y Puerto del Rey, Inc., era simulada. Agregó que a la fecha en que se realizó, no existían activos de clase alguna."*

Posteriormente, las partes prepararon el informe de conferencia con antelación al juicio. En la parte de estipulaciones adoptaron los veintiséis (26) hechos acogidos por el TPI.

El 9 de noviembre de 2004, se celebró una vista. Se acordó someter el asunto por los hechos estipulados. Dicho foro le concedió a las partes treinta (30) días para presentar escritos individuales solicitando sentencia sumaria para ser adjudicados conforme a derecho.

Puerto del Rey, Inc. se opuso a la solicitud de sentencia sumaria del demandante-recurrido. A su vez solicitó se emitiera sentencia sumaria a su favor. En apoyo a su posición indicó que los hechos alegados no eran constitutivos de una causa de acción en fraude de acreedores por lo que procedía la desestimación de la demanda.

El TPI denegó ambas solicitudes de sentencia sumaria parcial. Acogió como hechos no controvertidos los antes citados del 1 al 26. Se basó en que existían imputaciones de fraude y simulación de contrato, las cuales era preferible ver en un juicio plenario.

Específicamente, indicó que *"consideramos necesaria la celebración de una vista evidenciaria para poder determinar si se encuentran presentes todos los demás requisitos para descorrer el velo corporativo y de esta forma, concluir si procede o no la imposición de responsabilidad solidaria a los demandados por [la] Sentencia emitida en el caso Civil Núm. CS89-1861"*. Señaló una vista para el 27 de enero de 2006.

Debemos hacer hincapié en que la moción de sentencia sumaria presentada por la parte demandante-recurrida, —que motivó la resolución cuya revisión se solicita—, es el tercer intento de las partes en el pleito para lograr que la demanda de epígrafe sea resuelta de esa forma. En los años 2000 y 2003, tanto el demandante-recurrido como Puerto del Rey, Inc. sometieron sendas solicitudes de sentencia sumaria, las cuales fueron denegadas por el TPI y, en el caso de la primera, confirmada por este Tribunal y el Tribunal Supremo.

Posteriormente, debido a que las partes habían acordado someter el caso a base de los hechos estipulados, el demandante-recurrido presentó una tercera solicitud de sentencia sumaria. Analizada la misma, el TPI emitió la resolución recurrida en la que, al igual que los dos jueces anteriores, determinó que era necesario la celebración de una vista evidenciaria a los fines de determinar si Puerto del Rey Yacht Sales, Inc. era el *alter ego* de Puerto del Rey, Inc. Señaló que, de ser así, esta última deberá responder por la deuda de la primera como consecuencia de la sentencia emitida en su contra.

En las tres (3) solicitudes de sentencia sumaria, la contención principal del demandante-recurrido ha descansado consecuentemente: en que (1) la venta de los activos de Puerto del Rey Yatch Sales, Inc. por parte del Sr. Daniel W. Shelley, Presidente de Puerto del Rey, Inc., al Sr. Félix Molina, fue hecha en fraude de acreedores para burlar el pago de la sentencia que estaba próxima a recaer en el caso CS89-1861, y (2) Puerto del Rey, Inc. es la compañía subsidiaria y *"alter ego"* de Puerto del Rey Yacht Sales, Inc., lo que lo convierte en garantizador solidario de las deudas de ésta.

A petición de Puerto del Rey, Inc., accedimos que se presentara la transcripción de los procedimientos celebrados ante el TPI que dieron margen a la resolución recurrida y al demandante-recurrido que se expresase en torno a si se debía resolver la controversia a base de los hechos estipulados, según surgen de la resolución emitida por la Hon. Lydia E. Couvertier Martínez, el 10 de marzo de 2003. Con el beneficio de la transcripción

sometida por Puerto del Rey, Inc. la cual nos fue sometida el 30 de marzo de 2006, y los argumentos de las partes, resolvemos.

La controversia planteada gira en torno a determinar si procede o no resolver este caso mediante el mecanismo de sentencia sumaria, en vista de que las partes acordaron someter el mismo por los hechos estipulados y que fueron adoptados por el TPI. Resolvemos que no.

El TPI las denegó por entender que existe una controversia en cuanto a hechos esenciales y materiales que hacen necesaria la celebración de una vista, particularmente sobre la alegación del demandante-recurrido en el sentido de que Puerto del Rey Yacht Sales es un *alter ego* de Puerto del Rey, Inc., que convierte a la segunda en deudora solidaria de las deudas de la primera.

Puerto del Rey, Inc. argumenta que, dado a la manera en que el caso fue sometido —a base de los hechos estipulados por las partes—, el TPI no se podía negar a emitir una decisión final, ya fuera declarando con lugar la demanda o desestimándola. Aduce que la actuación del juez al denegar la sentencia sumaria y señalar una vista evidenciaria realmente le concede una nueva oportunidad al demandante para presentar prueba que el tribunal considere suficiente para demostrar el fraude de acreedores.

Amerita discutir los principios aplicables. La Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, regula el trámite de la sentencia sumaria. Establece que procede dictarla si de "*las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente*". Esto será así, cuando de los documentos no controvertidos que se acompañan con la moción, surge que no existe una legítima disputa de hecho a ser dirimida, sólo resta aplicar el derecho. *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 D.P.R. 563, 575 (1997).

En tal caso, el tribunal tendrá que: (1) analizar los documentos que acompañan la moción solicitando sentencia sumaria, y los incluidos con la oposición **y aquéllos que obren en el expediente del tribunal,** y (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 D.P.R. 599, 611 (2000).

Analizados estos criterios, el tribunal no dictará sentencia sumaria cuando: (1) existan hechos materiales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o (4) como cuestión de derecho no procede. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881, 913-914 (1994).

Cualquier duda en cuanto a si hay hechos pertinentes en controversia debe resolverse contra la parte que solicita la sentencia sumaria. Toda inferencia que se haga a base de los hechos **y documentos que obren en los autos** debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria. *García v. Darex P.R., Inc.*, 148 D.P.R. 364, 382 (1999).

Sólo procede dictarla cuando el tribunal tiene ante sí la verdad sobre todos los hechos pertinentes y no hay verdadera controversia factual entre las partes. *Hernández v. Bermúdez & Longo, S.E.*, 149 D.P.R. 543, 550 (1999). Cuando no existe una clara certeza sobre todos los hechos en controversia, no procede dictar sentencia sumaria. *Mgmt. Adm. Servs. Corp. v. E.L.A., supra*, a la pág. 610. Véase, además, *Metrop. de Préstamos v. López de Victoria*, 141 D.P.R. 844 (1996).

Es menester aclarar que en el presente caso ciertamente no se configura una causa de acción por fraude de

acreedores. La de rescisión por fraude de acreedores o pauliana pertenece al acreedor defraudado. Se dirige conjuntamente contra el adquirente y el deudor transmitente. Consiste primordialmente en obligar al adquirente a devolver con sus frutos la cosa recibida en virtud del contrato rescindido y al deudor a devolver el precio con sus intereses. Art. 1247 del Código Civil, 31 L.P.R.A. sec. 3496.

El demandante-recurrido no trajo al pleito a los terceros adquirientes de los activos de Puerto del Rey Sales Yacht, Inc. por lo que había falta de parte indispensable para una acción por fraude de acreedores. Tampoco solicitó la rescisión del contrato de compraventa de acciones de Puerto del Rey Yacht Sales, Inc. tal y como lo requiere el Art. 1249 del Código Civil, 31 L.P.R.A. sec. 3498.

De las alegaciones surge que el demandante-apelado establece una acción en contra de Puerto del Rey, Inc. basada en que su compañía subsidiaria, Puerto del Rey Sales Yacht, Inc., le sirvió de *alter ego*, por lo que las deudas de ésta son responsabilidad de la primera. ■ Ante tal situación, si no se configura una acción en fraude de acreedores, la controversia debe limitarse a determinar si efectivamente Puerto del Rey Yacht Sales, Inc. era *alter ego* de Puerto del Rey, Inc., en cuyo caso, de ser cierto, ésta respondería por la sentencia recaída contra la primera en el caso CS89-1861. Todas las demás alegaciones del recurrido inciden en ese tema.

Por su parte, Puerto del Rey, Inc. niega las alegaciones de la demanda. En apoyo de su posición, señala que el propósito de la venta de los activos de Puerto del Rey Yacht Sales, Inc. no fue burlar el pago de la sentencia, sino que se debió a que a dicha compañía le había ido mal en los negocios y sus pasivos excedían sus activos. Indica, además, que las ventas de las embarcaciones fueron efectuadas meses antes de presentarse la demanda de epígrafe y que no existe evidencia que confirme que posterior a ella dicha corporación tuviera activo alguno. Basado en esas alegaciones, también solicitó al tribunal que emitiera sentencia sumaria a su favor.

Amerita que, de forma panorámica, nos expresemos sobre las corporaciones que se constituyen en *alter ego* de otras. Por razones de necesidad económica se reconoce personalidad individual a determinados entes sociales distintos a sus componentes o miembros. Se le otorga una personalidad jurídica, separada de sus miembros o titulares. La entidad que surge al amparo de ese contexto se caracteriza por los siguientes criterios que se intercalan: (1) personalidad jurídica propia; (2) responsabilidad limitada; (3) gerencia centralizada; (4) libre transferibilidad de intereses; y (5) existencia perpetua. Díaz Olivo, Carlos E. *Derecho Corporativo - Corporaciones*, San Juan, Publicaciones Puertorriqueñas, 1999, pág. 11. Como norma general es principio reconocido que la corporación es una entidad distinta y separada de sus accionistas.

Existen situaciones en las que, por excepción, a una corporación no se le reconoce su existencia a los efectos de impedir que se le imponga responsabilidad personal a sus accionistas o a otra de quien es un *alter ego* y se hallan confundidas. Esto es conocido como la doctrina de *"rasgar"*, o *"descorrer"* el velo corporativo. Procederá únicamente cuando el reconocimiento de la personalidad jurídica separada equivalga a: (1) sancionar un fraude, (2) promover una injusticia, (3) evadir una obligación estatutaria, (4) derrotar la política pública, (5) justificar la inequidad, o (6) defender el crimen. Véase, *Srio. D.A.C.O. v. Comunidad San José, Inc.* 130 D.P.R. 782, 798 (1992); *Fleming v. Toa Alta Develop. Corp.*, 96 D.P.R. 240, 243 (1968); Díaz Olivo, *ob. cit.*, pág. 54.

Lo mismo sucede con las corporaciones subsidiarias de otras. Se respetará su personalidad como entidad independiente y separada, la cual se presume, aun cuando la compañía matriz posea todas las acciones de la subsidiaria y sus oficiales y accionistas sean los mismos. Lo importante es que no se ejerza completo dominio y control de una sobre otra, no sólo de las finanzas, sino de su administración, negocios y política.

Podrán, sin embargo, ser tratadas como una sola si ocurren las siguientes particularidades: (1) se mezclen o confundan transacciones, propiedad, empleados, o cuentas bancarias de las corporaciones; (2) no se observan las formalidades corporativas de cada corporación, tales como reuniones de la Junta de Directores y de los accionistas; (3) la corporación esté capitalizada inadecuadamente como unidad independiente en el sentido de

no tener capacidad para enfrentarse a sus obligaciones ordinarias previsibles; (4) las políticas de la corporación no van dirigidas principalmente a sus propios intereses, sino a los de la otra corporación. Véase, *Fletcher Cyc Corp.*, West Group, 1999, Vol. 1 §41.10 y 43, págs. 587, 619, 677, 711, 714, 723 y 725.

En *González v. San Just Corp.*, 101 D.P.R. 168 (1973), se resolvió que en una relación matriz-subsidiaria, para establecer que las corporaciones son una sola hay que probar "*la confusión entre las dos corporaciones*", y e.g., "*que las operaciones entre ambas corporaciones [son] exclusivas e integradas*". *Íd.*, págs. 170 y 172. No obstante, se respetará la personalidad de la compañía subsidiaria como entidad independiente y separada —la cual se presume— aun cuando la compañía matriz posea todas las acciones de la subsidiaria y sus oficiales y accionistas sean los mismos, siempre y cuando no se ejerza completo dominio y control de una sobre otra, no sólo de las finanzas, sino de su administración, negocios y política.

Resulta de rigor destacar que la prueba que justifica "*rasgar*" el velo corporativo a los fines de demostrar que dos corporaciones son un mismo ente jurídico, debe ser fuerte y robusta. *San Miguel Fertil, Corp. v. P.R. Drydock*, 94 D.P.R. 424, 430 (1967). *Cfr., Srio. D.A.C.O. v. Comunidad San José, Inc., supra*, pág. 798.

Ciertamente, estamos ante el tipo de caso que por su naturaleza no debe ser resuelto mediante el mecanismo de sentencia sumaria. Su fiel adjudicación sobre la única controversia que conlleva dilucidarse requiere un análisis detenido y cuidadoso de los hechos que deberá realizarse en una vista evidenciaria en la cual el demandante-recurrido pueda probar y justificar sus alegaciones en cuanto a que Puerto del Rey Yacht Sales, Inc. era un *alter ego* de Puerto del Rey, Inc.

Ante tal situación, es forzoso concluir, pues, que no erró el TPI al denegar la solicitud de sentencia sumaria presentada por el demandante-recurrido. Al momento de tomar una decisión, no tenía ante sí toda la verdad de los hechos ocurridos sobre ese extremo. Luego de examinar detenidamente el expediente ante nuestra consideración, entendemos que ciertamente existe una controversia real sustancial en cuanto a ciertos hechos materiales relacionada con las alegaciones de que Puerto del Rey Yacht Sales, Inc. era un *alter ego,* de Puerto del Rey, Inc., por lo que, de ser así, esta última responde por la deudas de la primera. Impiden, así las cosas, que sea resuelto mediante el mecanismo de sentencia sumaria.

Por los fundamentos antes expuestos, denegamos la expedición del auto *certiorari* solicitado.

Lo acuerda el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2006 DTA 88

**1.** Según surge de la resolución recurrida, pág. 296 del apéndice.

**2.** Pág. 400 del apéndice del recurso.

**3.** El 26 de mayo de 2000, el TPI —por medio del Hon. Luis A. Amorós Álvarez—, emitió una primera sentencia sumaria parcial a favor de la parte demandante, debido a que la parte demandada no contestó a tiempo un requerimiento de admisiones cursado por la primera. Se ordenó, además, el archivo y cierre del caso contra el codemandado José Luis Novas Dueño por desistimiento de la parte demandante. La referida sentencia fue revocada por este Tribunal —caso KLAN-00-01398— al entender que el hecho de que se hubiera dado por admitido el requerimiento de admisiones no justificaba la procedencia de una sentencia sumaria, además de que el caso planteaba cuestiones complejas de hechos y derecho, así como imputaciones de fraude y simulación que ameritaban ser dilucidadas mediante un juicio plenario.

**4.** El 10 de marzo de 2003 (Hon. Lydia E. Couvertier Martínez) declaró sin lugar la segunda solicitud de sentencia sumaria presentada por la parte demandante por entender que era necesario pasar juicio sobre las alegaciones de que Puerto del Rey Yacht Sales, Inc. era un *alter ego* de su compañía matriz y que transfirió los activos de la primera fraudulentamente a la segunda para evitar pagar la sentencia que en su día recayera sobre la compañía subsidiaria. Indicó, además, que era necesario pasar prueba sobre el alegado contrato simulado celebrado el 13 de marzo de 1990 entre Daniel W. Shelley, presidente de Puerto del Rey Yacht Sales, Inc., y el comprador y nuevo accionista, el fenecido Sr. Félix Molina.

**5.** La sentencia emitida por el Tribunal Supremo —CC-2001-300—, fue sólo a los efectos de modificar nuestro dictamen para aumentar la cuantía impuesta como sanción económica por incumplimiento procesal de la parte demandada.

**6.** Según surge de la primera causa de acción de la demanda en el caso de epígrafe, a las págs. 1-9 del apéndice del recurso.