Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII-DJ 2024-062C[1]

| | | |
|---|---|---|
| HIGHER POWER ELECTRICAL, LLC; COBRA ACQUISITIONS, LLC; LION POWER SERVICES, LLC Y MAMMOTH ENERGY SERVICES, INC.<br><br>*Apelante*<br><br>v.<br><br>MATTHEW CALICE<br><br>*Apelado* | TA2025AP00413 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV02104 (803)<br><br>Sobre: Impugnación o Confirmación de Laudo |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 24 de febrero de 2026.

Comparecen ante nos, Higher Power Electrical, LLC, (Higher Power), Cobra Acquisitions LLC, Lion Power Services LLC y Mammoth Energy Services, Inc. (en conjunto, parte apelante), mediante recurso de *Apelación* y nos solicitan que revoquemos la *Sentencia*[2] emitida el 4 de septiembre de 2025[3] por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro apelado). Mediante el referido dictamen, el TPI declaró *No Ha Lugar* la *Solicitud de Sentencia Sumaria Confirmando el Laudo*[4] y, en consecuencia, desestimó la *Petición de Confirmación de Laudo de Arbitraje*[5] que presentó la parte apelante.

Por los fundamentos que se exponen a continuación, **confirmamos** la *Sentencia* apelada.

---

[1] El recurso de epígrafe fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, con efectividad del 10 de enero de 2022, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones.
[2] Apéndice 37 del recurso de *Apelación.*
[3] Notificada el 5 de septiembre de 2025.
[4] Apéndice 28 del recurso de *Apelación.*
[5] Apéndice 1 del recurso de *Apelación, Exhibit M.*

**I.**

El caso de autos tuvo su génesis en octubre de 2017, cuando Higher Power[6] contrató al señor Matthew Calice (señor Calice o parte apelada) para realizar trabajos relacionados a la restauración de la infraestructura eléctrica de Puerto Rico, tras el paso de los huracanes Irma y María.

El 27 de octubre de 2017, el señor Calice suscribió un acuerdo de arbitraje (el acuerdo)[7] con Higher Power, al cual se le incorporaron las Reglas de Arbitraje Laboral de la American Arbitration Association (Reglas de la AAA). Así pues, las partes acordaron que, una vez se emitiera un laudo final, el árbitro quedaría privado de jurisdicción para revisar los méritos del laudo y la capacidad de anularlo recaería en un tribunal federal[8].

Transcurrido algún tiempo, el 14 de agosto de 2019, la parte apelante instó una *Demanda de Arbitraje*[9] ante la American Arbitration Association (AAA). Alegó violaciones de las secciones 207 y 216 (b) de la Fair Labor Standards Act del 1938 (FLSA)[10] y de las secciones 171, 250 *et seq* y 271 *et seq* del Puerto Rico Wage Payment Statute (PRWPS)[11]. Posteriormente, el señor Guillermo A. Nigaglioni (Árbitro) fue seleccionado para llevar a cabo el arbitraje.

---

[6] Higher Power, Lion Power (antes conocida como Cobra Energy LLC) y Cobra Acquisitions son empresas afiliadas y subsidiarias de Mammoth Energy Services Inc. Posterior a que los huracanes Irma y María impactaran a Puerto Rico en el 2017, Higher Power, la cual repara infraestructura de transmisión y distribución eléctrica, ayudó a restaurar la infraestructura eléctrica de Puerto Rico de conformidad con los contratos entre Cobra Acquisitions y la Autoridad de Energía Eléctrica de Puerto Rico.

[7] Apéndice 1 del recurso de *Apelación, Exhibit A*.

[8] *Íd*. I agree that any and all disputes arising out of or related to the employment relationship between the parties (including termination of employment) will be resolved by mandatory, binding arbitration pursuant to the Federal Arbitration Act and using the American Arbitration Association rules for the resolution employment disputes with the exception that the arbitration shall not have the right or authority to conduct any arbitration on a class, collective or representative basis. All arbitrations covered by this agreement shall be conducted as individual claims and each resolved in a single arbitration between the employee and company.

[9] Apéndice 1 del recurso de *Apelación, Exhibit B*.

[10] 29 USC sec. 203 *et seq.*

[11] 29 LPRA sec. 203 *et seq.*, sec. 250 *et seq.* y sec. 271 *et seq.*

Una vez comenzado el proceso, el arbitraje presentó contratiempos debido a que el señor Calice no cooperaba con la parte apelante para calendarizar su deposición. Al trascurrir más de un año, se logró la fecha de la toma de deposición. Sin embargo, la parte apelada la canceló. Tras la falta de diligencia e inactividad del señor Calice, el 11 de agosto de 2022, los peticionarios solicitaron al Árbitro que desestimara las reclamaciones con perjuicio, por el craso incumplimiento[12]. Evaluada tal solicitud, el 15 de agosto de 2022, el Árbitro emitió una orden final para mostrar causa dentro de cinco días calendario, y le ordenó a la parte apelada que presentara su respuesta en cuanto a la solicitud de desestimación de la parte apelante[13]. Una vez más, el señor Calice no fue diligente y presentó su contención luego de transcurrido el término provisto.

Así las cosas, el 5 de octubre del 2022[14], la AAA emitió una *Resolución y Orden Sobre la Moción de Desestimación*. En esta, el Árbitro ***desestimó con perjuicio*** las reclamaciones presentadas por el recurrido[15]. El Árbitro concluyó que, negar la solicitud de desestimación de la parte apelante y permitir que las reclamaciones continuaran, resultaría en un manejo desinteresado del caso por parte del señor Calice. Esto, a su vez, operaría en contra de los intereses del reclamante e incrementaría los gastos asociados al arbitraje.

En vista de lo anterior, el 7 de octubre de 2022, la parte apelada solicitó una audiencia con el Árbitro para que reconsiderada el *Laudo*[16]. El 10 de octubre de 2022, la AAA remitió un correo electrónico a las partes en el cual le concedió al señor Calice siete días calendarios para presentar una moción de reconsideración del

---

[12] Apéndice 1 del recurso de *Apelación*, *Exhibit C*.
[13] Apéndice 1 del recurso de *Apelación*, *Exhibit D*.
[14] Notificado el 6 de octubre de 2022.
[15] Apéndice 1 del recurso de *Apelación*, *Exhibit F*.
[16] Apéndice 1 del recurso de *Apelación*, *Exhibit G*.

*Laudo*, mientras que los peticionarios tendrían cinco días para responder[17].

El 20 de octubre de 2022, antes de la fecha límite[18] que el Árbitro había fijado para que la parte apelante respondiera a la reconsideración de la parte apelada, este emitió una orden para rescindir del *Laudo*[19].

Inconforme con lo anterior, el 21 de octubre de 2022, la parte apelante solicitó que el Árbitro retirara su orden de rescisión del *Laudo*[20]. Por su parte, el 2 de noviembre de 2022, el Árbitro emitió una orden que rectifica su postura en cuanto a la rescisión del *Laudo*[21]. En consecuencia, el 1 de febrero de 2023[22], enmendada el 3 de abril de 2023[23], la parte apelante presentó una petición para confirmar el *Laudo* ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico (Tribunal de Distrito). Así las cosas, el 6 de febrero de 2024, el Tribunal de Distrito emitió una *Opinión y Orden*, la cual desestimó el caso sin perjuicio por falta de jurisdicción federal sobre la materia[24]. En conformidad con lo anterior, el 7 de febrero de 2024, el Tribunal de Distrito dictó *Sentencia*[25].

Ante ese cuadro, el 1 de marzo de 2024, la parte apelante presentó ante el TPI la *Petición de Confirmación de Laudo de Arbitraje*. Tras el recurrido ser emplazado y pasado el término para que respondiera a la solicitud, el 15 de mayo de 2024, los peticionarios presentaron una *Moción Solicitando que se Declare la Petición Sometida sin Oposición y se Conceda el Remedio Solicitado*[26].

---

[17] Apéndice 1 del recurso de *Apelación*, *Exhibit H*.
[18] El término de cinco días calendario vencía el 22 de octubre de 2022.
[19] Apéndice 1 del recurso de *Apelación*, *Exhibit J*.
[20] Apéndice 1 del recurso de *Apelación*, *Exhibit K*.
[21] Apéndice 1 del recurso de *Apelación*, *Exhibit L*.
[22] Apéndice 1 del recurso de *Apelación*, *Exhibit M*.
[23] Apéndice 1 del recurso de *Apelación*, *Exhibit N*.
[24] Apéndice 1 del recurso de *Apelación*, *Exhibit O*.
[25] Apéndice 1 del recurso de *Apelación*, *Exhibit P*.
[26] Apéndice 9 del recurso de *Apelación*.

No obstante, el 24 de mayo de 2024, el TPI emitió y notificó una *Sentencia*[27] en la cual determinó que carecía de jurisdicción para atender la *Petición de Confirmación del Laudo*, toda vez que la parte apelante había presentado dicho caso en el foro federal. Igualmente, el foro apelado concluyó que: *"[n]o encontramos derecho, ni la parte nos puso en posición de conocer, derecho que provea que al presentar en un foro incorrecto se interrumpe el término que establece el Artículo 21 de la Ley de Arbitraje"*[28].

Oportunamente, el 3 de junio de 2024, la parte apelante presentó una *Solicitud de Reconsideración*[29]. Así pues, luego de solicitar tres prórrogas[30], el 24 de agosto de 2024, la parte apelada acudió al TPI mediante escrito intitulado *Calice's Motion to Dismiss the Petition and Response to Reconsideration*[31]. La misma estuvo sustentada bajo la Regla 10.2(5) de las de Procedimiento Civil[32] por dejar de exponer una reclamación que justifique la concesión de un remedio. En la moción, el señor Calice arguyó que el TPI tenía jurisdicción para atender la *Petición de Confirmación del Laudo*, sin embargo, nada expresó sobre la existencia de jurisdicción bajo la Ley Federal de Arbitraje (FAA por sus siglas en inglés), o el asunto de la prescripción. El 28 de agosto de 2024, cuatro (4) días luego de que la parte apelada presentara la moción, el TPI emitió y notificó una *Resolución*, que denegó la *Solicitud de Reconsideración* presentada por la parte apelante[33].

El 27 de septiembre de 2024, los apelantes presentaron un recurso de *Certiorari* ante este foro revisor bajo el caso KLCE202401053[34]. Evaluada la controversia, el 8 de noviembre de

---

[27] Apéndice 10 del recurso de *Apelación*.
[28] *Íd.*, pág. 3.
[29] Apéndice 11 del recurso de *Apelación*.
[30] Véase, Apéndice 12, 13, 16 y 18 del recurso de *Apelación*.
[31] Apéndice 20 del recurso de *Apelación*.
[32] 32 LPRA Ap. V, R. 10.2 (5).
[33] Apéndice 21 del recurso de *Apelación*.
[34] Apéndice 25 del recurso de *Apelación*.

2024[35], emitimos una *Sentencia*[36] en la cual expedimos el recurso solicitado, revocamos el dictamen recurrido y devolvimos el caso al foro apelado para la continuación de los procedimientos.

En consecuencia, el 17 de marzo de 2025, la parte apelante sometió una *Solicitud de Sentencia Sumaria Confirmando el Laudo*[37]. Por su lado, y luego de solicitar dos prórrogas para oponerse[38], el 25 de abril de 2025, la parte apelada presentó *Calice s Response in Opposition to Motion for Summary Judgment*[39]. El 13 de mayo de 2025, la parte apelante replicó la oposición presentada por el señor Calice[40]. El TPI emitió una *Orden* el 20 de mayo de 2025, concediéndole un término de diez días al señor Calice para presentar su dúplica.[41] El foro primario señaló que, una vez transcurrido dicho término o luego de la presentación de la dúplica, el asunto quedaría sometido para la consideración del tribunal. El señor Calice no presentó la dúplica.

Así las cosas, el 4 de septiembre de 2025[42], el foro apelado emitió una *Sentencia* en la cual declaró *No Ha Lugar* la *Solicitud de Sentencia Sumaria Confirmando el Laudo*, realizo las siguientes determinaciones de hecho:

> 1. El 27 de octubre de 2017, Matthew Calice suscribió un acuerdo de arbitraje con Higher Power (el "Acuerdo") como parte de su contrato para realizar trabajos en Puerto Rico.
>
> 2. El Acuerdo establece que, de surgir una disputa laboral, esta sería sometida a arbitraje y serían aplicables las disposiciones de la Ley Federal de Arbitraje y las Reglas de la AAA que no sean inconsistentes con la Sección IV del Acuerdo. En específico, dispone que:
>
>> Arbitration required by this policy shall be governed by the Federal Arbitration Act and conducted pursuant to the American Arbitration Association's Rules of Resolution of Employment Disputes (hereinafter "Rules") then in effect that are not inconsistent with this Section IV and its

---

[35] Notificada el 13 de noviembre de 2024.
[36] Apéndice 26 del recurso de *Apelación*.
[37] Apéndice 28 del recurso de *Apelación*.
[38] Apéndice 30 y 31 del recurso de *Apelación*.
[39] Apéndice 33 del recurso de *Apelación*.
[40] Apéndice 35 del recurso de *Apelación*.
[41] Apéndice 36 del recurso de *Apelación*.
[42] Notificada el 5 de septiembre de 2025.

Acknowledgement of Employee Handbook Receipt and Agreement, with the exception that the arbitrator shall not have the right to conduct any arbitration on a class, collective or representative basis.

3. La Sección IV del Acuerdo dispone que el árbitro deberá emitir un laudo razonado ("reasoned award") que:

applies the facts to the law of the case; fully sets forth findings of facts and evidence presented; fully sets forth conclusions of law based upon the parties' respective legal theories; indicates which legal theories were followed, which were not, and why; if damages are awarded, specifies the arbitrator's calculations of the types of damages awarded to each party not later than ninety (90) days following the close of the arbitration. Any appeal of or motion to vacate all or part of the arbitrator's award shall apply the same legal standard that would be used if the party moving to vacate or appeal the award were appealing a trial court judgment rendered following a bench trial sitting without a jury.

4. En o alrededor del 14 de agosto de 2019, conforme a lo dispuesto en el Acuerdo, Matthew Calice presentó una demanda de arbitraje ante la AAA alegando violaciones al Fair Labor Standards Act, 29 USC § 203 et seq. y la ley de Puerto Rico, denominado "Matthew Calice v. Mammoth Energy Services, Inc., d/b/a Cobra Energy; Higher Power Electrical, LLC; Cobra Acquisitions LLC; and Cobra Energy LLC, AAA Case No. 01-19-0002-5519" (el "Arbitraje").

5. Durante aproximadamente un año, desde junio 2021 a junio 2022, Matthew Calice no respondió a las repetidas solicitudes por las Partes Peticionarias para que proveyera fechas disponibles para la toma de su deposición en el Arbitraje.

6. Tras la intervención del árbitro, Matthew Calice proporcionó su disponibilidad y se programó su deposición. Sin embargo, el representante legal de este canceló unilateralmente la deposición y no brindó fechas adicionales de disponibilidad.

7. Las partes peticionarias intentaron repetidamente comunicarse con el representante legal de Matthew Calice, pero no recibieron respuesta, por lo que la deposición no pudo ser reprogramada.

8. El 11 de agosto de 2022, las partes peticionarias solicitaron la desestimación con perjuicio de las reclamaciones de Matthew Calice a consecuencia de su inactividad y falta de diligencia.

9. El 15 de agosto de 2022, el árbitro emitió una orden final para mostrar causa ("Final Order to Show Cause"), ordenando a Matthew Calice presentar una respuesta a la moción de desestimación de las partes peticionarias dentro de 5 días calendarios.

10. Matthew Calice no cumplió con los requisitos de la orden Final Order to Show Cause emitido por el árbitro y su abogado no respondió sino hasta el 29 de agosto de 2022,

pasada la fecha límite provista. En específico, este dispuso en el correo electrónico dirigido al árbitro que: Arbitrator Nigaglioni, Claimant provided Respondents with his dates of availability for deposition on August 15, 2022, prior to the entry of your order, to which no response from Respondents has been received. Further, we provide an opinion from Arbitrator Hampton, who is also overseeing sister/companion cases related to this matter. Arbitrator Hampton found that given the case management orders and the rules of the AAA the Respondent's identical motions to dismiss were to be denied without prejudice. As stated herein, Claimant's have provided Respondent's with available dates for Mr. Calice's deposition, which has largely been ignored by Respondents. Mr. Calice has demonstrated his intent to proceed forward with his deposition, therefore the basis for the Respondent's motion to dismiss is moot. Claimant's counsel respectfully requests that the motion be denied in the interest of justice to allow the deposition to go forward. The failure to respond to the order is solely the responsibility of Claimant's counsel and not the Claimant as Claimant has provided dates for his availability for deposition.

11. El 6 de octubre de 2022, la AAA notificó la titulada Resolution and Order as to the Motion to Dismiss a las partes, dictada en San Juan, Puerto Rico, donde dispuso que se desestimaba con perjuicio todas las reclamaciones presentadas por Matthew Calice.

12. En la Resolution and Order as to the Motion to Dismiss, el árbitro concluyó que, negar la moción de desestimación de las partes peticionarias y permitir la continuación de la reclamación resultaría en un manejo laxo y desinteresado del arbitraje por parte de Matthew Calice, lo que operaría en contra de los intereses del reclamante e incrementaría los gastos asociados al arbitraje. En específico dispuso que:

I AM CONVINCED THAT ALLOWING THIS CLAIM TO PROCEED BY DENYING THE MOTION TO DISMISS WILL ONLY RESULT IN AN UNINTERESTED AND LACKADAISICAL APPROACH TO THE CASE BY MR. CALICE'S COUNSEL. THIS WOULD NOT BE IN THE INTEREST OF THE CLAIMANT AND WOULD ONLY INCREASE THE COSTS OF THE ARBITRATION.

13. El árbitro también determinó en la Resolution and Order as to the Motion to Dismiss que el incumplimiento continuo por Matthew Calice con las órdenes relacionadas a la deposición fue injusto para las partes peticionarias, por lo que Matthew Calice tenía el deber de mantenerse al día en su reclamación y actuar con diligencia. También concluyó que era el deber del representante legal de este mantenerlo al día con los sucesos del arbitraje. En específico dispuso que:

THE FAILURE TO COMPLY WITH THE ARBITRATOR 'S ORDERS RELATIVE TO THE TAKING OF CLAIMANT CALICE'S DEPOSITION RESULTS IN UNFAIRNESS TO RESPONDENTS. IT IS THE DUTY AND RESPONSIBILITY OF CLAIMANT TO KEEP ABREAST AND INFORMED OF

THE COURSE OF HIS CLAIM. AND IT IS THE DUTY AND RESPONSIBILITY OF HIS COUNSEL TO KEEP [T]HE CLAIMANT INFORMED OF ALL MATTERS THAT PERTAIN TO HIS CLAIM. THE MERE FILING OF A CLAIM WITHOUT THE ACTIVE PARTICIPATION OF THE CLAIMANT IN THE ENSUING PROCESS, AND THAT OF HIS COUNSEL ALSO, IS NECESSARY IF ARBITRATION IS TO PROCEED AS INTENDED

14. En la Resolution and Order as to the Motion to Dismiss, el árbitro ordenó que las reclamaciones de Matthew Calice fueran desestimadas con perjuicio. En específico, estableció que:

RULE 39 (d) OF THE EMPLOYMENT ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION PROVIDES THAT THE ARBITRATOR "...may grant any remedy or relief that would have been available to the parties had the matter been heard in court..." UNDER RULE 37 OF THE FEDERAL RULES OF CIVIL PROCEDURE THE ARBITRATOR MAY GRANT ANY AND ALL AVAILALE RELIEFS TO THE PARTIES. ACCORDINGLY, MR MATTHEW CALICE'S CLAIMS ARE HEREBY DISMISSED WITH PREJUDICE.

15. El 7 de octubre de 2022, un día después de que se emitió la Resolution and Order as to the Motion to Dismiss, el representante legal de Matthew Calice le envió un correo electrónico a la AAA solicitando una audiencia con el árbitro para que reconsiderase el Resolution and Order as to the Motion to Dismiss. Indicó que:

Claimant respectfully requests that this matter be set for hearing with the Arbitrator for reconsideration. Good cause exists to reopen the matter and for an enlargement of the deadlines because Claimant remains ready, willing, and able to appear for deposition and the Order dismissing the case should be vacated. Please advise dates of availability for such a hearing at your earliest convenience.

16. El 10 de octubre de 2022, la AAA transmitió una orden del árbitro para que Matthew Calice presentara una moción de reconsideración del Resolution and Order as to the Motion to Dismiss, concediéndole 7 días calendario para presentarla y a las partes peticionarias 5 días para responder:

Dear Counsel:

The Arbitrator has advised of the following: Claimant is to file a Motion for Reconsideration of the Order granting the Motion for Dismissal. I will allow Claimant seven (7) calendar days to file such Motion for Reconsideration. Respondents will have five (5) days to respond.
Thank you.

17. El 17 de octubre de 2022, Matthew Calice presentó una solicitud de reconsideración del Resolution and Order as to the Motion to Dismiss.

18. El 20 de octubre de 2022, antes de la fecha límite que el árbitro fijó para que las partes peticionarias respondieran a la moción de reconsideración de Calice, el árbitro emitió una

orden con el fin de rescindir el Resolution and Order as to the Motion to Dismiss. En específico dispuso que:

Dear Counsel:

Arbitrator Nigaglioni has issued the following order:

There is a saying in Spanish, "el movimiento se demuestra andando", literally "movement is evidenced by walking". At last Claimant's counsel has submitted a pleading which endeavors to justify past practices on its part and Claimant's interest in continuing his claims. While long on promises to follow Arbitrator's Orders, movement will have to be seen in order to be believed. I do not need to hear from Respondents counsel to decide that the Order for Dismissal is hereby rescinded and Mr. Calice's claims against Respondents are reinstated. If actions in the future show any sign of resistance to hold or delay the deposition of Mr. Calice, I may not be as considerate in ruling for dismissal of his claims.

The Case Manager at American Arbitration Association is urged to communicate with the parties' counsel to advise them of this ruling.

19. El 21 de octubre de 2022, las partes peticionarias solicitaron que el árbitro retirara su orden de rescisión del Resolution and Order as to the Motion to Dismiss. Estas presentaron el argumento sobre que, conforme el Acuerdo, el arbitraje ante sí estaba gobernado por las Reglas de la AAA, arguyendo que el árbitro no tiene la autoridad de volver a determinar los méritos de una reclamación ya decidida.

20. El 2 de noviembre de 2022, el árbitro emitió el Order Relative to Claimant's Motion for Reconsideration on Order of Dismissal mediante la cual rescindió el Resolution and Order as to the Motion to Dismiss. En específico, dicha orden dispone como argumento que:

1) ON OCTOBER 2, 2022 WE ISSUED A RESOLUTION AND ORDER PERTAINING TO A MOTION FOR DISMISSAL FILED BY RESPONDENTS.
2) ON OCTOBER 7 2022 CLAIMANT REQUESTED THAT THE MATTER BE SET FOR A HEARING, ALL[E]GING THAT THERE IS GOOD CAUSE FOR ALLOWING CLAIMANT TO APPEAR FOR THE DEPOSITION DEMANDED BY RESPONDENTS AND TO PRESENT THE EVIDENCE THAT SUPPORT HIS CLAIMS AGAINST RESPONDENTS.
3) ON OCTOBER 10, 2022 WE ISSUED A DIRECTIVE TO THE PARTIES'S COUNSEL GRANTING CLAIMANT SEVEN (7) CALENDAR DAYS TO FILE A MOTION FOR RECONSIDERATION OF OUR RESOLUTION AND ORDER OF OCTOBER 2, 2022.AND GRANTING RESPONDENTS FIVE (5) DAYS TO FILE A REPLY.
4) PURSUANT TO SUCH DIRECTIVE CLAIMANT FILED " CLAIMANT'S MOTION FOR RECONSIDERATION OF ORDER OF DISMISSAL AND REQUEST TO REINSTATE THE DEMAND".
5) ON OCTOBER 20, 2022 WE ISSUED AN ORDER GRANTING CLAIMANT"S PLE[A]S IN HIS MOTION

FOR RECONSIDERATION BECAUSE WE FOUND THEREIN NEW INFORMATION AND A VALID ARGUMENT IN EQUITY TO REINSTATE THE DEMAND.

6) RESPONDENTS REPLIED BY SENDING AN E-MAIL WHEREIN THEY ALLEGE THAT THE AWARD ISSUED BY US CANNOT BE RESCINDED SINCE IT IS GOVERNED BY THE AAA EMPLOYMENT ARBITRATION RULES.

7) RESPONDENTS ARE CORRECT IN THAT AN AWARD CANNOT BE RESCINDED BUT ONLY MODIFIED TO CORRECT CLERICAL, TYPOGRAPHICAL, TECHNICAL OR COMPUTATIONAL ERRORS. YET THE ORDER ISSUED ON OCTOBER 20. 2022 WAS NOT MEANT AS AN AWARD. THE INTENT HERE WAS TO JOG THE CLAIMANT"S COUNSEL TO RE[A]CT IN A MORE ACTIVE MANNER THAN THE PRO FORMA REPRESENTATION THAT HAS BEEN THE NORM.

8) SUCH INTENT IS EVIDENT IN OUR DIRECTIVE OF OCTOBER 10, 2022, ASKING THE CLAIMANT TO FILE FOR RECONSIDERATION. 9) THE ORDER OF DISMISSAL WAS NOT INTENDED AS A FINAL AWARD AND IT LACKS THE USUAL LANGUAGE THAT THE ASSOCIATION INCORPORATES IN ANY AWARD. BECAUSE OF THE ABOVE AND BECAUSE WE FEEL EVERY CLAIMANT SHOULD HAVE THE OPPORTUNITY TO PRES[E]NT HIS EVIDENCE BEFORE HE IS FOUND VICTORIOUS OR NOT IT IS MY DECISION THAT THE ORDER OF DISMISSAL IS RESCINDED AND THE DEMAND OF MATTHEW CALICE IS REINSTATED. THE CASE MANAGER FOR THE AMERICAN ARBITRATION ASSOCIATION WILL NOTIFY THE PARTIES OF THIS DETERMINATION.

21. Ante la orden de rescisión del árbitro, el 1 de febrero de 2023, enmendada el 3 de abril de 2023, las partes peticionarias presentaron una petición para confirmar la revocada Resolution and Order as to the Motion to Dismiss ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico ("Tribunal de Distrito Federal"). La petición se tituló "Higher Power Electrical, LLC, Cobra Acquisitions, LLC, Lion Power Services, LLC, and Mammoth Energy Services, Inc., v. Matthew Calice, Case 3:23-mc-00065- SCC" (el "caso federal").

22. El 6 de febrero de 2024, el Tribunal de Distrito emitió una Opinion and Order en donde, sin llegar a los méritos de la petición, desestimó el caso federal sin perjuicio por falta de jurisdicción federal sobre la materia.

23. El 7 de febrero de 2024, el Tribunal de Distrito Federal dictó sentencia desestimando el caso federal sin perjuicio.

24. La Petición en este caso fue presentada el 1 de marzo de 2024, dentro del año siguiente a la presentación del caso federal que tuvo efecto interruptor sobre el término prescriptivo para solicitar la confirmación en este caso. Por

lo cual, este Tribunal tiene jurisdicción para atender la petición de confirmación del Laudo.

En consecuencia, desestimó la *Petición de Confirmación de Laudo de Arbitraje* que presentó la parte apelante.

Insatisfecha aún, el 6 de octubre de 2025, la parte apelante acudió a este foro intermedio mediante recurso de *Apelación* y señaló la comisión del siguiente error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE UNA DESESTIMACIÓN DEL PROCEDIMIENTO DE ARBITRAJE CON PERJUICIO POR INACTIVIDAD SE TRATA DE UNA DETERMINACIÓN INTERLOCUTORIA QUE PUEDE SER DEJADA SIN EFECTO POR EL ÁRBITRO CUANDO, REALMENTE, SE TRATA DE UN LAUDO SOBRE EL CUAL EL ÁRBITRO NO TENÍA AUTORIDAD PARA ACTUAR, UNA VEZ EMITIDO Y NOTIFICADO.

Mediante *Resolución* emitida el 7 de octubre de 2025[43], le concedimos a la parte apelada hasta el 5 de noviembre de 2025 para presentar su oposición. Sin embargo, dicha parte presentó una *Moción de Prórroga*, la cual concedimos hasta el 5 de diciembre de 2025. En cumplimiento, el señor Calice sometió su *Response Brief Of Appellee* según ordenado.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**-A-**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36 de Procedimiento Civil[44]. Por medio de este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta[45]. Sin embargo, la sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y

---

[43] Notificada el 8 de octubre de 2025.
[44] 32 LPRA Ap. V, R. 36.
[45] *Vera v. Dr. Bravo*, 161 DPR 308, 332 (2004).

que solo reste por disponer las controversias de derecho existentes[46].

Por su parte, el promovente de una sentencia sumaria deberá establecer, mediante declaraciones juradas o con prueba admisible en evidencia, que no existe controversia real respecto a hechos materiales de la controversia[47]. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo[48].

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia real por la cual cualquier duda es insuficiente para derrotar una solicitud de sentencia sumaria[49]. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales[50]. De esta manera, la parte promovida debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición[51]. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa"[52]. No puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa[53].

Entretanto, la Regla 36.3 de Procedimiento Civil establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida[54]. Respecto a la moción solicitando que se dicte

---

[46] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994).
[47] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015).
[48] *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).
[49] *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 110.
[50] *Íd.*
[51] *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020).
[52] *Íd.*, pág. 44.
[53] *Ramos Pérez v. Univisión*, *supra*, págs. 215-216.
[54] 32 LPRA Ap. V, R. 36.3.

una sentencia sumaria, la Regla 36.3 (a) de Procedimiento Civil

dispone que la misma tiene que desglosar lo siguiente:

> (1) una exposición breve de las alegaciones de las partes;
> (2) los asuntos litigiosos o en controversia;
> (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
> (6) el remedio que debe ser concedido[55].

Por otra parte, la Regla 36.3 (b) de Procedimiento Civil dispone

que la contestación a la moción de sentencia sumaria debe contener,

además de los sub incisos (1), (2) y (3) del inciso (a): una relación de

los hechos esenciales y pertinentes que están en controversia, con

referencia a los párrafos enumerados por la parte promovente y con

indicación de la prueba en la que se establecen esos hechos; una

enumeración de los hechos que no están en controversia; y las

razones por las cuales no se debe dictar la sentencia, argumentando

el derecho aplicable[56]. Asimismo, cuando se presente una solicitud

de sentencia sumaria conforme a la Regla 36 de Procedimiento Civil,

*supra,* "la parte contraria no podrá descansar solamente en las

aseveraciones o negaciones contenidas en sus alegaciones, sino que

estará obligada a contestar en forma tan detallada y específica como

lo haya hecho la parte promovente. De no hacerlo así, se dictará la

sentencia sumaria en su contra si procede"[57].

Igualmente, la Regla 36.3 de Procedimiento Civil[58], dispone

que:

[…]

> (e) La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas

---

[55] 32 LPRA Ap. V, R. 36.3 (a).
[56] 32 LPRA Ap. V, R. 36.3 (b).
[57] 32 LPRA Ap. V, R. 36.3 (c).
[58] 32 LPRA Ap. V, R. 36.3 (e).

> si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente.

[...]

Como mencionamos anteriormente, la parte promovente de una solicitud de sentencia sumaria está obligada a establecer, mediante prueba admisible en evidencia, la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor[59]. Para que tal sea el resultado, viene llamado a desglosar, en párrafos numerados, los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos, debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que sirven de apoyo a su contención[60]. Cuando de las propias alegaciones, admisiones o declaraciones juradas, surge una controversia bonafide de hechos, la moción de sentencia sumaria resulta ser improcedente. Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria en el caso y cualquier duda en su ánimo, lo debe llevar a resolver en contra de dicha solicitud[61].

El Tribunal Supremo de Puerto Rico ha expresado en varias ocasiones que la sentencia sumaria es un remedio extraordinario y discrecional que solo se debe conceder cuando no existe una controversia genuina de hechos materiales y lo que resta es aplicar el derecho[62]. En términos generales, al dictar sentencia sumaria, el tribunal deberá hacer lo siguiente:

> (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en

---

[59] *Rodríguez García v. UCA*, 200 DPR 929 (2018), Ramos Pérez v Univisión, 178 DPR 200 (2010), *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, (2005); *Vera v Dr. Bravo, supra.*
[60] 32 LPRA Ap. V, R. 36.3 (a)(4); *Roldán Flores v. M. Cuebas, et al.*, 199 DPR 664, (2018); *SLG Zapata-Rivera v. J.F.,* 189 DPR 95 (2013).
[61] *Vera v Dr. Bravo, supra*; *Mgmt. Adm. Servs., Corp. v. ELA*, 152 DPR 599 (2000).
[62] *Maldonado v. Cruz*, 161 DPR 1, 39 (2004).

oposición, así como aquellos que obren en el expediente del tribunal;

(2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos[63].

Analizados estos criterios, el tribunal no dictará sentencia sumaria cuando: "(1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho, no proceda"[64]. La sentencia sumaria se puede dictar a favor o en contra de la parte que la solicita, según proceda en Derecho[65].

Por tratarse de un remedio discrecional, el uso del mecanismo de sentencia sumaria tiene que ser mesurado y solo procederá cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos[66]. De tal manera, solo procede dictar sentencia sumaria cuando surge claramente que el promovido por la moción no puede prevalecer bajo ningún supuesto de hechos y que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia[67]. Cuando no existe una clara certeza sobre todos los hechos de la controversia, no procede una sentencia sumaria[68]. Cualquier duda sobre la existencia de una controversia sobre los hechos materiales, debe resolverse contra la parte promovente[69]. Toda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de

---

[63] *Vera v. Dr. Bravo, supra*, 334.
[64] *Íd.*, págs. 333-334; *Acevedo Arocho v. Depto. Hacienda y otros*, 212 DPR 335, 336 (2023).
[65] *Maldonado v. Cruz, supra*, pág. 39.
[66] *Vera v. Dr. Bravo, supra*, pág. 334.
[67] *Nieves Díaz v. González Massas*, 178 DPR 820, 848 (2010).
[68] *Metrop. de Préstamos v. López de Victoria*, 141 DPR 844 (1996).
[69] *Rosario v. Nationwide Mutual*, 158 DPR 775, 780 (2003) citando a *Audiovisual Lang. v. Sist. Est. Natal Hnos.,* 144 DPR 563, 575 (1997).

sentencia sumaria[70]. Así pues, tomando en consideración que la sentencia sumaria es un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley"[71].

Es importante mencionar que, este Tribunal utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una moción de sentencia sumaria[72]. Por consiguiente, los criterios que este foro intermedio debe tener presentes al atender la revisión de una sentencia sumaria son los siguientes:

(1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil y la jurisprudencia le exigen al foro primario;

(2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36;

(3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

(4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia[73].

Finalmente, y como norma general, si la moción procede en derecho, el tribunal debe dictar la sentencia sumaria "a favor del promovente si la parte contraria no responde de forma detallada y específica a una solicitud debidamente formulada"[74]. Si el Tribunal de Primera Instancia considera que no procede dictar sentencia sumaria en el caso que tiene ante sí, o que no procede conceder ese remedio en su totalidad, es obligatorio que cumpla con lo expuesto en la Regla 36.4 de las de Procedimiento Civil[75], la cual dispone que:

Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del

---

[70] *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 610-611 (2000).
[71] *Roig Com. Bank v. Rosario Cirino*, 126 DPR 613, 617 (1990).
[72] *Vera v. Dr. Bravo, supra*, pág. 334.
[73] *Roldan Flores v. M Cuebas*, 199 DPR 664, 679 (2018).
[74] *SLG Zapata-Rivera v. J. F. Montalvo*, 189 DPR 414, 432 (2013).
[75] 32 LPRA Ap. V, R. 36.4.

pleito, ni se concede todo el remedio solicitado o se deniega la misma, y es necesario celebrar juicio, **será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia.** Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. (Énfasis nuestro).

En conclusión, es menester consignar los hechos que, a juicio del TPI, están en controversia y aquellos que no lo están para entender cuáles son los hechos que impiden que se dicte la sentencia sumaria en su totalidad.

**-B-**

El arbitraje es uno de los métodos alternos a la intervención judicial para la solución de conflictos. *C.O.P.R. v. S.P.U.*, 181 DPR 299, 362 (2011)[76]. Entre sus modalidades, se encuentra el arbitraje obrero-patronal. Nuestro ordenamiento jurídico favorece el arbitraje obrero-patronal, pues es un proceso rápido, económico y sencillo para resolver ese tipo de controversias[77]. La determinación que toma el árbitro respecto a la controversia laboral se le conoce como *laudo de arbitraje*[78]. Este no es ni un contrato ni una sentencia, pero disfruta de la naturaleza de ambos[79]. Una vez se emite el laudo, termina la función adjudicativa del árbitro[80].

De manera que, cuando se acuerda el uso del arbitraje como mecanismo para ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece gran deferencia. Por ello, un laudo basado en una sumisión voluntaria está sujeto a la revisión judicial sólo si las partes convienen que la

---

[76] *COPR v. SPU*, 181 DPR 299, 362 (2011).
[77] *UGT v. Centro Médico del Turabo*, 202 DPR 917, 928 (2019).
[78] *C.O.P.R. v. S.P.U., supra*, pág. 368.
[79] *Íd.*
[80] *Íd.*, págs. 368-369.

controversia sometida al árbitro sea resuelta conforme a derecho[81].

En asuntos obrero-patronales la deferencia dada al arbitraje se debe:

> [P]rimero, a que es un mecanismo adjudicativo menos técnico, más flexible y más costo efectivo que el proceso judicial; segundo, porque es el mecanismo que se encarga de mantener la estabilidad laboral y, tercero, porque es parte importante de nuestro sistema de relaciones laborales, ya que es un aspecto integral de la negociación colectiva[82].

Asimismo, la deferencia a las determinaciones del árbitro se sostiene en la norma de auto restricción, razón por la que el mismo no se puede anular por meros errores de hecho o derecho[83]. No obstante, la norma no se aplica con rigurosidad si la parte que desea impugnar el laudo argumenta alguna de las siguientes causas:

> (1) fraude, (2) conducta impropia, (3) falta de debido procedimiento en la celebración de la vista, (4) violación de la política pública, (5) falta de jurisdicción, y (6) que el laudo no resuelve todas las controversias que se sometieron. Si ninguna de las circunstancias mencionadas está presente, los tribunales solo pueden revisar un laudo si al redactar la cláusula de arbitraje, o como parte del pacto de sumisión, las partes le impusieron al árbitro la obligación de resolver la controversia conforme a derecho[84].

En ese caso, "la revisión judicial de los laudos de arbitraje se asemeja a la revisión judicial de las decisiones administrativas. La intervención judicial no se justifica por una mera discrepancia de criterio con el árbitro, pues se destruiría la esencia de los procesos de arbitraje"[85]. Por lo tanto, los foros judiciales apelativos tendrán la autoridad para revisar todas las cuestiones de derecho sustantivo resueltas por el árbitro para poder determinar si son correctas"[86]. Es decir, solo se puede anular si no se ha resuelto la controversia conforme a derecho[87].

---

[81] *Depto. Educ. v. Díaz Maldonado,* 183 DPR 315, 325 (2011) (citas omitidas).
[82] *C.O.P.R. v. S.P.U., supra,* pág. 364.
[83] *Íd.*, pág. 369.
[84] *Íd.*
[85] *UGT v. Centro Médico del Turabo, supra,* pág. 929.
[86] *C.O.P.R. v. S.P.U., supra,* pág. 370.
[87] *Íd.*

**-C-**

Los hechos del caso de marras ocurrieron durante la vigencia de las Reglas de la AAA aprobadas y enmendadas el 1 de noviembre de 2009. La Regla 1 de las Reglas de la AAA establece que en aquellos casos donde las partes pactan que las referidas reglas sean parte del acuerdo de arbitraje y exista una inconsistencia material adversa entre estas y el acuerdo de arbitraje, el árbitro deberá aplicar las Reglas de la AAA. De otra parte, la Regla 29 dispone que un laudo no se puede basar únicamente en el incumplimiento de una de las partes. Esto responde a que en la Regla 29 se establece que el proceso de arbitraje puede continuar aun ante la ausencia de cualquiera de las partes, a no ser que las leyes aplicables dispongan lo contrario. En estos casos, el árbitro le requerirá a la parte compareciente presentar aquella evidencia que el árbitro requiera para emitir un laudo. Pertinente a la controversia planteada, la Regla 39 establece que el laudo del árbitro debe ser final y vinculante.

**-D-**

Como mencionáramos anteriormente, es un principio general del derecho común de arbitraje que una vez el árbitro emite su determinación está impedido de pasar nuevamente sobre ella[88]. Esta norma se le conoce como la doctrina de *functus officio* y la misma forma parte de nuestro ordenamiento jurídico[89]. Esta doctrina se fundamenta en el hecho de que la fuente de autoridad y jurisdicción del árbitro para atender la controversia proviene del acuerdo suscrito entre las partes. De manera que, su jurisdicción concluye en el momento que este emite el laudo[90].

---

[88] Elkouri & Elkouri, *How Arbitration Works*, 6th ed., Washington D.C., ABA 2010, pág. 325.
[89] *JRT v. AEE*, 112 DPR 169 (1982).
[90] *Íd.*, pág. 171; Demetrio Fernández Quiñones, *El Arbitraje Obrero Patronal*, Colombia, Forum 2000, págs. 54-55.

No obstante, la doctrina de *functus officio* no impide que el árbitro revise un laudo si es para corregir errores que surgen de su faz, perfeccionar un laudo incompleto o para aclarar alguna ambigüedad[91]. Bajo la primera excepción se le permite al árbitro corregir un laudo cuando se trata de errores mecanográficos, secretariales o aritméticos[92]. La segunda excepción le permite al árbitro atender un asunto que se encuentra ante su consideración, pero no se adjudicó completamente o el remedio no quedó especificado[93]. La tercera excepción aplica en aquellos casos donde un laudo, que parecería estar completado, resulta ser ambiguo y necesita clarificación[94]. Sin bien es cierto que la doctrina de *functus officio* reconoce que la jurisdicción del árbitro concluye en el momento que este emite el laudo, también reconoce que existen ocasiones en las que el árbitro puede volver sobre el laudo sin reabrir la controversia en los méritos.

### III.

En esta ocasión, tenemos la oportunidad de resolver si procede una sentencia sumaria en un caso que busca la confirmación del laudo de arbitraje.

En el recurso ante nuestra consideración, discutiremos primeramente si las partes y el foro primario cumplieron con los criterios de la Regla 36 de las de Procedimiento Civil[95] y la jurisprudencia. Posteriormente, discutiremos el error señalado por la parte apelante.

Examinada de *novo* la *Solicitud de Sentencia Sumaria Confirmando el Laudo* presentada por la parte apelante, así como la *Calice's Response in Opposition to Motion for Summary Judgment* presentada por parte apelada, concluimos que las partes cumplieron

---

[91] *Elkouri & Elkouri, op. cit.,* pág. 328.
[92] *Elkouri & Elkouri, op. cit.,* págs. 328-329.
[93] *Elkouri & Elkouri, op. cit.,* pág. 329.
[94] *Íd.*
[95] 32 LPRA Ap. V.

con las exigencias de la Regla 36.3 de las de Procedimiento Civil[96]. A tenor con lo anterior, nos corresponde evaluar si el TPI aplicó correctamente el derecho.

Pasemos a revisar la *Sentencia* apelada, el TPI realiza (24) determinaciones de hechos, las cuales acogemos como nuestras. De las mismas surge que, no existe una controversia real sustancial en cuanto a ningún hecho material, por lo que solo restaría por resolver una controversia de estricto derecho[97]. Así pues, el foro apelado le correspondía atender la controversia trabada en el caso de autos a saber; si la *Resolución* emitida por el Árbitro el 5 de octubre de 2022 es una determinación interlocutoria, o una final y si el Árbitro quedaría impedido de modificar, revocar o corregir su determinación conforme la doctrina de *functus oficio,* la cual establece que un árbitro no puede pasar juicio sobre un laudo una vez lo emite[98].

Según surge de los hechos y de la *Sentencia* apelada, las partes de epígrafe incorporaron en el acuerdo la Ley Federal de Arbitraje y las Reglas de la AAA. Asimismo, las partes pactaron que el Árbitro quedaría privado de jurisdicción una vez se emitiera **un laudo final**. De manera que, el Árbitro quedaría impedido de modificar, revocar o corregir su determinación conforme la doctrina de *functus officio.*

Ahora bien, en la Sección IV del acuerdo otorgado por las partes, se establece que es un laudo final. Fíjese que dicha sección dispone que el Árbitro deberá emitir un laudo en el que: 1) aplique los hechos al derecho del caso; 2) incluya determinaciones de hechos y la evidencia presentada; 3) incluya conclusiones de derecho conforme a las teorías legales de las partes, entre otros requisitos[99].

---

[96] 32 LPRA Ap. V. Ambas partes utilizaron los exbibits incluidos en la Demanda presentada por la parte apelante, entrada # 1 SUMAC TPI.
[97] *Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 314, (2021).
[98] JRT v. AEE, 112 DPR 169, 171 (1982).

[99] Apéndice 1 del recurso de *Apelación, Exhibit A.*

Asimismo, el propio Árbitro señaló que la antes mencionada *Resolución* cuestionada no fue un laudo, sino una orden procesal no final cuyo fin era que el señor Calice actuara en su propio caso.

Ante este cuadro fáctico irrefutable, el árbitro no ha emitido un laudo final apelable. Conforme al derecho aplicable y los hechos de este caso, concluimos que el TPI actuó correctamente al denegar la *Petición de Confirmación de Laudo de Arbitraje* de la parte apelante. Como bien señaló el foro apelado, la Resolución emitida por el Árbitro no es un laudo y no le puso fin a la controversia. De manera que, la controversia continúa pendiente ante el Árbitro y, por ende, carece de madurez para atender si procede o no confirmar el laudo.

Es decir, el error señalado no fue cometido.

**IV.**

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, ***confirmamos*** la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Adames Soto concurre sin voto escrito.

                              Lcda. Lilia M. Oquendo Solís
                              Secretaria del Tribunal de Apelaciones